14333

## STATE v. ROYSTER

(186 S. E., 921)

Before Mann, J., Union, September, 1935.

*Messrs. Samuel R. Watt, Solicitor* and *J. Frost Walker, Jr.,* for appellant,

*Messrs. Barron, Barron & Walker* and *John D. Long,* for respondent,

July 14, 1936.

*Per curiam.*

The following agreed statement of fact, with slight variations as to phraseology, is contained in the record for appeal: At the September, 1935, term of the Court of General Sessions for Union County, the grand jury returned a true bill charging the defendant Royster with the murder of one W. B. Franklin, on or about June 19, 1935. The alleged killing occurred at Monarch Mills, in the suburbs of the city of Union, during a fight between certain of the mill employees who were out on a strike and other employees who had not struck. A large crowd of union people had gathered at the mill gate, armed with clubs and sticks, and as the employees were leaving the mill at the noon hour, a young man by the name of McCutcheon, who had been working that morning, was attacked by a man from Tucapau, S. C., and what practically amounted to a riot followed, in which one A. L. Stutts, an overseer in the cardroom of Monarch Mills, was shot and killed by Franklin, who himself was immediately thereafter shot and killed by the defendant. Franklin, who at the time of the homicide was a magistrate's constable, had been employed as a deputy by Monarch Mills to police the mill property, but a short time prior to the killing had been replaced by Royster.

Immediately upon the return of a true bill by the grand jury, the defendant was arraigned, and the solicitor inquired of counsel as to when they would be ready for trial, and was told that they desired the Court to hear and to pass upon a motion. They then moved that all textile members of the jury venire, whether members or nonmembers of a labor union, be excluded from serving as jurors in the case. The motion was supported by a number of affidavits, which stated, in substance, that a strike was on at the Monarch Mills at the time of the homicide; that several hundred people had gathered in front of the mill and a large number of them were armed with sticks and other weapons; that at 12 o'clock, when the workers at the mill filed out through its gates, the shooting took place; that on account of the strike and the killing of Stutts, a nonunion man, by Franklin, a union member, there was considerable feeling between the members of the union of the Monarch Mills and other textile workers; that four members of the jury venire belonged to the labor union at Monarch Mills and were among the strikers at the time of the fatal shooting; that the feeling existing between the union and the nonunion members was so intense and bitter that none of the textile workers would be unprejudiced jurors in the case; that at the time the venire was drawn by the jury commissioners, there were several members of the local union of the United Textile Workers at Monarch and Ottaray Mills present, and that the union raised funds for the purpose of employing counsel to assist in the prosecution; that the feeling of prejudice existing between members and nonmembers of the union had spread to the various mills in Union county, where local affiliated unions of the United Textile Workers are located; and that all textile employees were prejudiced, one way or another, and were lined up on one side or the other, and could not, therefore, be fair and impartial in the matter. The affidavits presented showed a strong and bitter feeling existing against the defendant Royster on the part of members of the various local unions of the United Textile Workers, and that this feeling was

especially intense and bitter at the two adjoining plants, known as the Monarch and the Ottaray. These affidavits were signed by 21 citizens of various walks of life in Union County. No affidavits were presented or testimony produced to show that there was any irregularity, or any violation of the law, either in the drawing of the jury or in the serving of the jurors.

The solicitor opposed the motion; but the presiding Judge granted it and ordered 15 of the jurors out of the 36 on the venire, who were textile employees, excluded from service in the case, and directed the clerk of the court to take the names of these 15 out of the jury box. He then instructed the jury commissioners to draw a venire of jurors, who would necessarily have to come from the 5-mile box, to serve in the case, but not to draw any textile employees. The Judge held, in substance, that the affidavits presented showed that the feeling existing between union and nonunion employees of the textile mills of the county, especially at Monarch and Ottaray plants of the Monarch Mills, was intense and bitter, and also tended to show that each side believed that its economic interest was involved. He stated that in the event such interest of either side was affected by the outcome, aside from the question of discretion, he felt that he would be compelled, as a matter of law, to hold that such jurors should be excluded. He further stated that he was solely concerned in obtaining for the State and for the defense a fair and impartial trial, and that under the showing made by the affidavits, this could only be done by excluding the jurors from each class, namely, the union and nonunion members, and that he thought as a matter of discretion it was his legal duty to exclude them.

The solicitor, stating in open Court that he conceived the ruling to be prejudicial to the rights of the State and one that might be invoked as a broadening precedent, and that the State would be wholly without a remedy if he proceeded to trial, asked the Court to continue the case in order that an appeal might be taken from such ruling. The motion was

granted, and the questions involved have been duly argued here and presented for our consideration and decision.

We shall first notice the contention of the respondent that the appeal should be dismissed on the grounds (a) that it is premature because not from a final judgment, and (b) that it presents only an abstract question, as the defendant could not now be tried before either of the venire affected by the order.

As to ground (a), *State v. Byars,* 79 S. C., 174, 60 S. E., 448, and *State v. Burbage,* 51 S. C., 284, 28 S. E., 937, are cited and relied upon. In the first of these cases the State excepted to an order granting the defendant a new trial. This Court refused to pass upon the questions raised, holding that appeal would lie only from sentence; a final judgment. In the second, the Court held that an order overruling a motion to quash the indictment was not appealable. While we adhere to the principles stated in these decisions, it will be seen from a reading of them that the orders there appealed from did not interfere with the State's right to obtain a trial before a lawfully selected jury, with individual disqualification ascertained in accordance with prescribed tests. In the case at bar, the effect of the order made, and as made, was not limited to that term of the court, but applied in its effect to any venire of jurors by which the defendant might be tried at any time. In other words, the order, unappealed from, would become the law of the case obtaining throughout its prosecution. It is seen, therefore, that the question here presented is wider in its reach and more vital than any question arising upon the erroneous standing aside of a juror or the erroneous quashing of a panel, either of which would not serve as a precedent or as an order made and continuing with the force of the law of the case. The State was without remedy, therefore, except by appeal.

As to ground (b), what we have already said applies. Ordinarily, an abstract question will not be considered. But it appears, as we have said, that the order here made, and as made, would have the effect of governing the trial whenever

had, and might deprive the State of a substantial right as above indicated. The Court thinks, therefore, that this contention of the respondent should be rejected, also.

The real question presented by the appeal is whether the presiding Judge was in error in excluding, in the circumstances detailed, and for the reasons stated, the 15 jurors of the venire legally drawn and served, and in directing the jury commissioners to exclude all textile workers from the special venire ordered by him to be drawn. The solicitor contends that there was no basis for the exercise of that judicial discretion which will safeguard the accused's right to an impartial trial, as there was no application of the test provided by law (Section 637 of Code of 1932), which is ample and exclusive, for ascertaining bias or prejudice of the individual juror; and cites *State v. Williams,* 31 S. C., 238, 9 S. E., 853, 861, as sustaining this position.

From the facts stated in the *Williams case,* it appears that several persons were jointly indicted for murder, but that a severance was granted. One was tried and convicted. Williams was then put on trial, and when the jury was being impaneled, each of several jurors, when "called to the book," was challenged by counsel for the defendant upon the ground that he had served upon the panel which had tried the case against the other defendant. The presiding Judge ordered these jurors to be sworn on their *voir dire,* and the challenge as to each of them was disposed of in that way. But when one J. A. Huggins, who had testified as a witness in the other case, was called, the Judge, without any examination of the juror on his *voir dire,* declared him to be prejudiced, and ordered him to stnad aside. The defendant Williams appealed alleging error; and this Court, in disposing of the question, said: "When J. A. Huggins was called his Honor ordered that he should not be presented to the defendant, stating that he heard his testimony in the other case, and that he did not regard him as a person without prejudice, and that he was not at all satisfied with his talking with the witnesses at the hotel door. We do not know upon what legal principle this was

done. It is true, as we have said, that an impartial jury should be had. This is essential both for the State and for the prisoner, and the General Assembly has enacted a law to that end. Section 2261, Gen. St., *supra*. That act provides the mode and manner by which the question of prejudice shall be determined, with the right to either side, upon motion, to have it applied. We think it was error for his Honor to act without applying this legal test. If one juror could be thus ruled out, why not the whole panel? No doubt there was sufficient cause for the exclusion, and no doubt, had the legal test been applied, Huggins would have been ordered out; but the act provides the mode and manner, and it should have been adopted."

It was pointed out in *State v. Robertson,* 54 S. C., 147, 31 S. E., 868, 869, that a jury should be composed "of persons who, as far as practicable, are free from any bias or prejudice, either for or against one or the other of the parties," and that the lawmaking power recognizing the importance of the matter had made ample provision, by the enactment of what is now Section 637 of the Code, for attaining the desired end. It was also pointed out that this statute had been construed in the case of *State v. Williams, supra,* "as investing the circuit Judge with exclusive power to determine whether a given juror, after examination on his *voir dire,* is indifferent in the cause"; and that such construction had been adopted in a sufficient number of subsequent cases to settle the question.

The respondent contends, however, that the facts of the case at bar bring it within the principles announced in *Tucker v. Buffalo Mills,* 76 S. C., 539, 57 S. E., 626, 627, 121 Am. St. Rep., 957, and that *State v. Williams* is not controlling. It appears that when the *Tucker case* was called for trial, counsel for the plaintiff requested that all jurors be asked whether they were employees or stockholders in either the Union or Buffalo Cotton Mills, asserting that any juror connected with either of these mills was incompetent to try the case. The defendant objected solely on the ground that the

two mills, while having one president, were distinct corporations. The inquiry disclosed that three jurors were employed by the cotton mills named and two by the Union mills store, and these were thereupon excluded. On appeal of the case, the Court said: "Appellant contends that the Circuit Court should have examined the jurors on their *voir dire,* and cites 'State v. Williams, 31 S. C., 238, 9 S. E., 853; but no request for such examination was made, and the ground of objection stated shows that there was no issue as to facts, but presented merely a legal question as to whether the jurors were disqualified on an admitted state of facts."

*Yarborough v. Electric Company,* 100 S. C., 33, 84 S. E., 308, 309, is also cited and relied on by the respondent. When that case was proceeding to trial, the Court inquired whether any juror was related to the plaintiff or in the employ of the defendant. Two stood up, and these were excused from the panel. The appellant excepted to this action of the trial Judge, and on appeal this Court, citing *Tucker v. Buffalo Mills, supra,* disposed of the question as follows: "It will be observed that the statute says 'on motion of either party.' The record does not show that either party made a motion to examine the jurors on oath. The jurors did not consider themselves entirely unconnected with the appellant, and it was within his Honor's discretion to exclude them."

Much space is devoted in the argument of counsel to a discussion of the matter that a juror, to be competent, must be without bias or prejudice, both as to the person and the cause to be tried, and that it is the duty of the trial Judge to see that such jurors are selected to try a case, so far as it may be practicable to do so. This argument merely states the general rule prevailing in all jurisdictions. As said by this Court in *Bishop v. Nicholson,* 146 S. C., 245, 143 S. E., 802, 803, "if this great right of the people [the right of trial by jury], is to be preserved, the jury box must not only be kept pure, but that each individual juror ought to be above the least suspicion."

In the case at bar, the question arising was a serious one. Two classes of employees, members and nonmembers of a labor union, were shown to be bitter in their feeling toward each other, due to a strike which was then on, and to the killing of a member of one class by a member of the other. Confronted with this situation, the able and fair trial Judge thought it best, for the purpose of securing to the State and to the defense a fair and impartial trial, that all textile employees, they being either of one class or the other, should be excluded as jurors in the case. While doubtless, if the facts alleged in the affidavits were true, and they were not disputed, many of these employees were biased or prejudiced, one way or the other, with respect to the defendant. But we do not think that it may soundly be held, either as a matter of law or of fact, that all members of a certain class, especially where such class is a large one, are biased or prejudiced in a particular matter because of feeling existing between such classes. But even if such fact should finally be made to appear, the only way it could properly be determined in such a case would be by applying the legal test provided for in Section 637 of the Code.

Nor do we think that *Tucker v. Buffalo Mills, supra,* is at all controlling under the facts of this case. That suit, one on the civil side of the Court, was proceeding to trial, as has been said, when it was ascertained by the presiding Judge that certain members of the jury were in the employ or service of one party or the other to the action. These were thereupon excused as jurors in the case, and counsel sat by and made no motion to have them sworn on their *voir dire,* as he had a right to do, but proceeded to select a jury in the manner provided for in civil suits. In the case at bar, the situation was entirely different. While it is true that the grand jury, as already indicated, had returned a true bill against the defendant, Royster, and he had been arraigned, the case had not been called for trial. In fact, this could not have been immediately done without the consent of the de-

fendant. Therefore, the matter of impaneling a jury was not at the time engaging the attention of the Court. The question was merely, as above stated, on the exclusion of all textile employees from the jury that should try the defendant at that term of the Court or at any other time.

The Court has carefully and painstakingly considered this important matter, and is of opinion that the presiding Judge should have refused the motion and given counsel for either side, if they so desired, an opportunity upon the call of the case for trial, to have the jurors sworn on their *voir dire*. As stated in the *Williams case, supra*, the statute (Section 637), provides the mode and manner by which the question of the bias or prejudice of a juror shall be determined; and as held in *State v. Robertson*, these provisions of law for ascertaining this desired end are ample. It is hardly necessary to add that while "the Court shall, on motion of either party in suit, examine, on oath, any person who is called as a juror therein," this does not mean that the trial Judge may not of his own motion place jurors on their *voir dire*, if, in his good judgment, he should conclude that this test should be applied.

The order appealed from is reversed.