15847

STATE v. JUDGE

(38 S. E. (2d), 715)

*Mr. A. L. Hamer,* of Charleston, for appellant, ▇▇▇

*Solicitor Robert McC. Figg, Jr.,* of Charleston, for respondent,

June 7, 1946.

Mr. Chief Justice Baker delivered the unanimous Opinion of the Court.

At the June, 1945, term of the Court of General Sessions for Charleston County, appellant was indicted for the murder of Alric A. Gore, who died from a pistol-shot wound received on the 16th day of April, prior thereto, in said Charleston County.

Upon his arraignment, the appellant pleaded not guilty and was tried before Honorable William H. Grimball, Circuit Judge, and a jury. The trial resulted in a verdict of guilty of murder, without a recommendation to mercy, and appellant was duly sentenced to suffer death by electrocution.

From such conviction and sentence he has appealed to this Court on fourteen exceptions, which the appellant alleges raise four issues, as follows:

"1. Did the presiding judge err in the overruling of appellant's objection, when the court allowed the alleged confession to be introduced in evidence?

"2. Did the presiding judge err in refusing to grant the motion of the appellant for a directed verdict of not guilty?

"3. Did the presiding judge err in not instructing the jury that the sole question for their consideration was whether the appellant was guilty of Manslaughter or not guilty?

"4. Did the presiding judge err in refusing the motion for a new trial, when the evidence showed that the shooting took place in self-defense, also there was no malice whatever shown, and if the appellant was guilty of anything it could not have been more than Manslaughter, as the shooting took place in sudden heat and passion, and not with malice?"

The State has more succinctly stated the questions involved to be:

"1. Was the evidence sufficient to support appellant's conviction of murder?

"2. Did the presiding judge err in ruling admissible in evidence a written statement signed by appellant in which he admitted firing the fatal shot?"

The facts surrounding the death of the said Alric A. Gore, as disclosed by the record, fully warranted the verdict of the jury. The deceased was a bus driver in the employ of South Carolina Power Company, and there is no issue in the case as to the cause of his death, to wit, that he died from a pistol-shot wound. On the 16th day of April, 1945, at approximately nine o'clock P. M., a bus of said Company, operated by the deceased, made a stop at Five Mile Station and picked up some colored passengers, one of whom was the appellant herein; just before or at about the time the bus started up, someone outside called to someone inside the bus, and whoever it was that was addressed on the inside of the bus said, "Catch the next bus and come on"; the bell rang for the bus to stop at the next stop, and as the bus stopped some passengers got off at the rear door, while a colored man came to the front and said to the bus driver, "We are not going any further, I want my money back"; the bus driver replied, "I can't give you á dern cent back"; whereupon the colored man pulled out a revolver and shot the bus driver (The appellant's version is that the driver said, "Hell, no", and that he reached down and came up with a pistol and that is when he shot him; that each fired at the precise moment, and that the bullet from the driver's pistol hit him in the top of his head); immediately following the shooting, this colored man jumped from the bus and fled, and the bus driver died within a few minutes.

The foregoing is taken from the testimony of two eye-witnesses, passengers on the bus sitting in such a position that they had an unobstructed view of the driver and his assailant. Neither of these eye-witnesses undertook to positively identify the appellant as the colored man who did the shooting. However, upon appellant's arrest on April 18, he was found to have on his person some unfired bullets of the same

calibre as was the bullet fired into the deceased and an empty cartridge, and when asked by the officer making the arrest if that was the bullet he killed the bus driver with, he replied, "Yes".

In the light of a written confession which we will discuss later herein, the eye-witnesses were examined as to whether the driver of the bus, the deceased, had a weapon of any description, and more particularly a pistol, and whether he made any move to procure such a weapon, and it was their testimony that the driver did not have a pistol in his possession, so far as they could see, and that they could have seen it if he had one, did not reach down at all, did not shoot at the appellant, and was shot while he was sitting straight up in the driver's seat.

The County police officers reached the scene of the shooting soon thereafter, and from a description of the negro who fired the fatal shot, more particularly as to the clothes he was wearing, including his hat (and no doubt from other information), on April 18, the day the appellant was arrested, the officers went to the home of the appellant and found a .38 pistol which was hanging in the appellant's coat, and also clothing consisting of a pair of trousers, a hat, a sport shirt, and a coat tallying with the description of the clothes worn by the assailant of the deceased. The pistol had six bullets in it, all unfired, and some additional bullets were found in the home. About twenty minutes after the search of the house, the appellant was arrested while driving a truck, and some more unfired bullets were found in his possession, and also an empty cartridge. It was at that time that the arresting offcer asked the appellant if that was the bullet he killed the driver of the bus with, and the appellant replied, "Yes". Upon being arrested, the appellant was carried to the police station in the City of Charleston, and upon being questioned about the shooting, he made a statement which was reduced to writing, was read over by him, signed by him, and witnessed by the officers.

Before this signed statement was offered in evidence, testimony was submitted that it was made freely and volun-

tarily and that there were no threats, force or duress used in procuring the same, nor were there any inducements of any nature offered the appellant, and that the statement was written "like he wanted to say it". This written statement was not offered in evidence until after the *corpus delicti* had been proven.

When this written statement was offered in evidence, counsel for appellant objected to its introduction on the ground that it was "not sworn to", and that he didn't know the circumstances under which it was signed.

It is not necessary that a written confession or statement be sworn to by the party making same, if it be properly proven that the statement was made by such party freely and voluntarily. The record in this case is devoid of any testimony that the written statement was procured by any means which would constitute a denial of due process of law in violation of either the State Constitution or Federal Constitution. Indeed, when the appellant testified in his own behalf, he did not claim that he made the statement under duress or other unlawful or improper means, or that he was improperly treated in any manner by the officers who had him in custody. The written statement, which will be reported, accords with the testimony of appellant upon the trial of the case.

In *State v. Henderson,* 74 S. C., 477, 55 S. E., 117, it is stated:

"* * * The law is well settled against the contention of the defendant's counsel that a confession should be excluded as not voluntary merely because made to an officer having the custody of the prisoner. *State v. Branham,* 13 S. C., 389; *State v. Dodson,* 14 S. C., 628. In deciding the question of fact whether such a confession is free from threat or inducement, the conduct of the officer will be rigidly scrutinized, but the conclusion of the Circuit Judge on that issue of fact cannot be reviewed by this Court unless so manifestly erroneous as to show an abuse of judicial discretion. Here the officers not only made no threats and

used no force, but treated the prisoner with commendable consideration. * * *"

We deem it unnecessary to cite other of the numerous cases in which holdings to the same effect were made.

We mention two other significant facts appearing in the testimony. Only one pistol shot was heard by any witness for the State or the appellant, and a pistol was not found in the bus or in the deceased driver's tin box containing his effects if the testimony on behalf of the State is to be believed. There was also testimony that the deceased did not own a pistol.

The substantial issue raised by the testimony on behalf of the appellant was whether the appellant in firing the fatal shot was acting in self-defense, which, like all issues arising out of the testimony, was one to be decided by the jury. Manslaughter is the unlawful killing of a human being in sudden heat of passion upon a sufficient legal provocation; and it has been held by this Court in numerous cases that no words alone, however opprobrious, will constitute that legal provocation which is necessary to reduce a killing from murder to manslaughter where the death is caused by the use of a deadly weapon. Under a strained construction of the appellant's testimony and that of his witnesses, the possible issue, aside from self-defense, was made that the killing was reduced from murder to manslaughter, that is, whether the opprobrious words were accompanied by the appearance of an assault—by some overt, threatening act—which could have produced "the heat of passion." The trial Judge, therefore, fully charged the law applicable to reducing the crime of murder to that of manslaughter.

Under the testimony adduced by the State, and which we have held admissible, and even without the admission of the written statement of the appellant, there was ample evidence to justify the trial Judge's refusal to direct a verdict of not guilty, because the officer who arrested the appellant had testified that the appellant had admitted to him that the bullet from the empty cartridge found on his person when he was arrested was the one he had fired into the deceased.

And, as above indicated, there was nothing in the testimony which would have warranted the trial Judge in instructing the jury that their verdict would be limited to one of guilty of manslaughter or not guilty.

Appellant's No. 4 of the "Questions Involved" probably requires a discussion of the phrase "with malice aforethought" contained in the definition of murder.

Section 1101 of the Code of 1942 defines murder in this language: "Murder is the killing of any person with malice aforethought, either express or implied". This definition in no wise affects the ingredients which are necessary to constitute murder, but leaves them exactly and in every particular as they stood at common law.

It would appear that the appellant is taking the position that the State failed to prove beyond a reasonable doubt that the killing of the deceased was accompanied by malice aforethought.

In the comparatively recent case of *State v. Heyward*, 197 S. C., 371, 15 S. E. (2d), 669, this Court quoted with approval the following definition of malice from *State v. Gallman*, 79 S. C., 229, 60 S. E., 682:

" 'It is a wicked condition of the heart. It is a wicked purpose. It is a performed purpose to do a wrongful act, without sufficient legal provocation; and in this case it would be an indication to do a wrongful act which resulted in the death of this man, without sufficient legal provocation, or just excuse, or legal excuse.' * * *";
and from 29 C. J., 1084:

" 'In its popular sense, the term "malice" conveys the meaning of hatred, ill-will, or hostility toward another. In its legal sense, however, as it is employed in the description of murder, it does not of necessity import ill-will toward the individual injured, but signifies rather a general malignant recklessness of the lives and safety of others, or a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief; in other words, a malicious killing is where the act is done without legal justification, excuse, or extenuation, and malice has been frequently,

substantially so defined as consisting of the intentional doing of a wrongful act toward another without legal justification or excuse.' "

With reference to the word "aforethought," we quote the language of the court in *State v. Milam,* 88 S. C., 127, 70 S. E., 447:

"\* \* \* While there may be and probably is some distinction between 'malice' and 'malice aforethought'—the latter conveying more the idea of premeditation and design, and being, therefore, more intense in respect to the wickedness of heart involved than in the word 'malice' alone, still the word 'aforethought' is usually understood to refer rather to the time when the evil intent is conceived. The authorities agree that it need not exist for any appreciable period of time before the commission of the act,—indeed, it may be conceived at the very moment the fatal blow is given. It is sufficient in law if the combination of the evil intent and act produce the fatal result. 2 Bish. Cr. L., 677.

"Where the evidence makes a question whether the act was done in malice or in sudden heat and passion upon sufficient legal provocation, it becomes more important that the jury should be instructed that the evil intent called malice should be 'aforethought' in its technical legal sense. But where it is apparent from the evidence that if the act was done with malice at all, it must have been with 'malice aforethought', in its legal signification, the distinction becomes unimportant. *In this case, there was no evidence which would have warranted a finding that defendant shot in sudden heat and passion, upon sufficient legal provocation; therefore he shot either with malice or in self-defense.*" (Emphasis added.)

In the instant case, as in the case of *State v. Milam, supra,* there was no evidence which would have warranted a finding of fact that defendant (appellant) shot in sudden heat of passion, upon sufficient legal provocation; therefore he shot either with malice or in self-defense.

As aforesaid, the testimony of the appellant and his witnesses raised the issue that he fired the fatal shot in self-defense, which defense he had to establish by the greater weight of the testimony. It is our opinion, formed from a study of the record, that the jury correctly decided all issues, and that there was no basis for the trial Judge to interfere with the verdict as rendered. There was ample evidence to support a conviction for murder.

The trial Judge made an exceptionally full and clear charge of the law, and carefully guarded all rights of the defendant (appellant) throughout his trial. This Court has studied the record with care, and can find no error.

All exceptions are overruled, and the judgment appealed from is affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, TAYLOR and OXNER concur.