551 S.E.2d 280

**The STATE of South Carolina, Respondent,**

**v.**

**Thomas Ray BALLINGTON, Appellant.**

**No. 3346.**

Court of Appeals of South Carolina.

Heard April 3, 2001.

Decided May 29, 2001.

Rehearing Denied Aug. 22, 2001.

264

S. Jahue Moore and Heath P. Taylor, both of Wilson, Moore, Taylor & Thomas, of West Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka and Assistant Attorney General Tracey C. Green, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for respondent.

HEARN, Chief Judge:

Thomas Ray Ballington was convicted of murdering his wife, Edna Lynn Ballington (Wife). He was sentenced to life imprisonment. He appeals, arguing that (1) because a magistrate reduced the grand jury's murder indictment to a charge of manslaughter, the court of general sessions lacked jurisdiction to try him for murder; (2) the trial court erred in admitting an incriminating statement he made to police; and (3) the trial court erred in failing to grant his directed verdict motion. We affirm.

## FACTS

Sometime after 2:00 p.m. on September 24, 1998, West Columbia firefighters arrived at Ballington's residence in re-

sponse to a 911 call that a person inside was unconscious. Ballington was waiting for them in the yard. He unlocked the front door and directed them to Wife lying face down behind the door at the foot of the stairs. The firefighters found no pulse or other signs of life, so they moved her to an area with more room and began CPR. There was one shoe underneath her, and one shoe on the stairs. She had marks on her face and neck. Ballington had a scratch on his face. The firefighters noticed an indentation on the wall.

Emergency medical service (EMS) personnel soon arrived, continued CPR, and prepared to transport Wife to the hospital, although it appeared she had been dead for some time. She had marks on her neck consistent with something pressing against her airway, blood in her airway, blood around her nose and mouth, and bruises of various ages. Ballington told an EMS worker he had been with his wife that morning and was supposed to meet her at home. When he arrived, he found her at the base of the stairway.

Mike Robinson with the Lexington County Sheriff's Department arrived while EMS personnel worked on Wife. Robinson spoke with Ballington who said he had been to lunch with Wife and left her at the home at approximately 12:45 p.m. He returned to work and later learned from Wife's employer that she had not returned to work. On his way home, his vehicle broke down, and he found a ride back to his workplace where he borrowed a car. When he arrived home, he found Wife lying on her stomach at the foot of the stairs. He turned her over, called 911, and attempted to administer mouth-to-mouth, but blood came out of her nose. He then tried to clean her face and clear her airway. Shortly thereafter, the firefighters arrived on the scene. When Officer Robinson asked Ballington about the scratch on his face, he first stated he had a skin condition and then said he did not know how he received the mark.

Detective Scotty Frier arrived and began speaking with Ballington, who repeated the events as he described them to Robinson. At Detective Frier's suggestion, the two talked further in a patrol car. The detective, aware Wife's injuries were not consistent with a fall, began asking more detailed questions. When Ballington explained he and Wife had been

separated for months and she lived outside the marital home, Detective Frier decided to advise him of his *Miranda*[1] rights. Ballington acknowledged those rights on a printed form and chose to proceed with the interview. He recounted his earlier version of events. Detective Frier then spoke with another officer who reiterated the evidence indicated a struggle rather than a fall. Detective Frier decided to place Ballington under arrest for criminal domestic violence.

At the police station, Detective Frier informed Ballington his rights were still in effect and they continued to talk. Detective Frier explained Ballington's version of events was not consistent with the evidence and that Wife's injuries were completely inconsistent with a fall. Detective Frier told Ballington that he was going to have to tell the truth about what happened.

Approximately an hour and fifteen minutes after Ballington arrived at the station, he admitted killing Wife. He gave a statement that he and Wife were in the home after lunch looking for financial papers she needed. She told him she was going to seek full custody of their young son, Austin. He became upset because he loved Austin and had lost custody of another son to his former wife. Wife gave him "a cold look" when he asked why she would do that to him. He then grabbed her from behind and placed his arm around her neck. After he let go, she fought back and warned he would never see Austin again. Ballington later reflected in his statement, "Maybe that's when I lost it." He again held her around her neck with his arm. As she tried to free herself, they fell into the wall, and she went limp. He said he could not detect a pulse and did not know whether she was alive or dead when he left the home.

## DISCUSSION

### I. Jurisdiction of Murder Charge

Ballington argues a magistrate reduced the grand jury's murder indictment to a charge of manslaughter and the trial

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

court thus should not have tried him on the greater offense. We disagree.

■ Ballington requested a preliminary hearing after his arrest. However, before a preliminary hearing was held, the grand jury indicted Ballington for murder. Upon Ballington's motion, a circuit court judge issued an order granting him a post-indictment preliminary hearing. Ballington had not received that hearing when his case was called to trial several months later. In a hearing on pre-trial motions, he indicated he hoped to use the preliminary hearing as a discovery tool. The circuit court judge granted Ballington's request for a preliminary hearing. At that hearing, defense counsel argued Ballington should be tried for manslaughter rather than murder because there was no probable cause that the crime was premeditated. The magistrate agreed to "send it back up as a manslaughter."

At the beginning of his trial, Ballington attempted to plead guilty to voluntary manslaughter. His attorney argued the magistrate's decision "had the effect of modifying the indictment." The trial court, however, agreed with the State that the indictment, rather than the magistrate's ruling, controlled. The court then tried Ballington for murder. On appeal, Ballington argues this was error.

■ Every criminal defendant is entitled to notice of his right to a preliminary hearing "to determine whether sufficient evidence exists to warrant [his] detention and trial." Rule 2(a), SCRCrimP. If a defendant makes a timely request for a hearing, one should be held within ten days. Rule 2(a)-(b), SCRCrimP. However, the hearing "shall not be held ... if the defendant is indicted by a grand jury ... before the preliminary hearing is held." Rule 2(b), SCRCrimP; *see also State v. Hawkins*, 310 S.C. 50, 54–55, 425 S.E.2d 50, 53 (Ct.App.1992) (holding trial court did not err in refusing to quash defendant's indictments because he did not receive a requested preliminary hearing because he was indicted before a preliminary hearing was held). Furthermore, a defendant has no constitutional right to a preliminary hearing. *State v. Keenan*, 278 S.C. 361, 365, 296 S.E.2d 676, 678 (1982). Thus, although Ballington may have timely requested a preliminary

hearing, his right to have the hearing ended with the grand jury's indictment.

Furthermore, the circuit court judge could not restore the right to a preliminary hearing by ordering a post-indictment preliminary hearing. The trial court obtained jurisdiction over Ballington by way of the grand jury's indictment. *See* S.C. Const. art. I, § 11 ("No person may be held to answer for any crime the jurisdiction over which is not within the magistrate's court, unless on a presentment or indictment of a grand jury. . . .").[2]

Rule 2, SCRCrimP terminates a magistrate's jurisdiction over a non-magistrate level offense when the defendant is indicted by a grand jury. Murder is not an offense within the magistrate court's jurisdiction. S.C.Code § 22-3-540 (1989) (stating magistrates have exclusive jurisdiction of all criminal cases where the punishment does not exceed a $100 fine or thirty days imprisonment); S.C.Code Ann. § 22-3-550 (1989) (stating magistrates have jurisdiction over offenses subject to fines or forfeitures of no more than $200 or thirty days imprisonment); S.C.Code Ann. § 22-3-545 (Supp.2000)

---

2. Ballington argued at trial and appears to argue on appeal that the circuit court judge's order granting him a post-indictment preliminary hearing and giving the magistrate all powers appurtenant to that office is the law of the case because the State did not appeal the order. As a result, Ballington contends the solicitor could not argue at trial and on appeal that the hearing was limited strictly to discovery issues. An unappealed order, right or wrong, is ordinarily law of the case. *Charleston Lumber Co. v. Miller Hous. Corp.*, 338 S.C. 171, 175, 525 S.E.2d 869, 871 (2000). However, intermediate orders are appealable only when they involve the merits or impair a substantial right. *See* S.C.Code Ann. § 14-3-330(2)-(3) (1976). Examples of pre-trial orders the State may appeal immediately are: (1) the suppression of evidence where the suppression significantly impairs the prosecution, (2) the exclusion of an entire class of persons from serving on a jury venire, and (3) the refusal to allow the State to withdraw a plea offer. *See State v. McKnight*, 287 S.C. 167, 168, 337 S.E.2d 208, 209 (1985) (allowing appeal of suppression of evidence); *State v. Royster*, 181 S.C. 269, 273, 186 S.E. 921, 923 (1936) (finding exclusion of class of persons from jury venire immediately appealable); *Reed v. Becka*, 333 S.C. 676, 681, 511 S.E.2d 396, 399 (Ct.App.1999) (holding refusal to allow withdrawal of plea offer is directly appealable). The circuit court judge's order granting Ballington a preliminary hearing did not involve the merits of the case or impair a substantial right. Therefore, it was not directly appealable and did not become the law of the case through the State's failure to immediately appeal it.

(stating cases involving crimes punishable by no more than $5,000, one year imprisonment, or both may be transferred from general sessions to magistrate's court); S.C.Code Ann. § 16–3–20 (Supp.2000) (stating murder is punishable by death, life imprisonment, or a mandatory minimum term of thirty years imprisonment). The magistrate in this case was without jurisdiction to reduce the grand jury's indictment from murder to manslaughter. Accordingly, Ballington's argument that the magistrate's reduction of the charge to manslaughter prevented the circuit court from trying him for murder is unavailing.

## II. Ballington's Inculpatory Statement

Ballington also asserts the trial court erred in denying his motion to suppress his inculpatory statement to the police because he confessed only after Detective Frier indicated he would eventually have to tell police the truth. We disagree.

The test of the admissibility of a confession is voluntariness. *State v. Von Dohlen,* 322 S.C. 234, 243, 471 S.E.2d 689, 694 (1996) ("A confession is not admissible unless it was voluntarily made."). A determination of voluntariness requires examination of the totality of the circumstances. *Id.* at 243, 471 S.E.2d at 694–95. To introduce the statement made after a defendant has been advised of his rights, the State must prove by a preponderance of the evidence he voluntarily waived those rights. *State v. Reed,* 332 S.C. 35, 42, 503 S.E.2d 747, 750 (1998). "Once a voluntary waiver of the *Miranda* rights is made, that waiver continues until the individual being questioned indicates that he wants to revoke the waiver and remain silent or circumstances exist which establish that his 'will has been overborne and his capacity for self-determination critically impaired.'" *State v. Rochester,* 301 S.C. 196, 200, 391 S.E.2d 244, 246 (1990) (quoting *State v. Moultrie,* 273 S.C. 60, 61–62, 254 S.E.2d 294, 294–95 (1979)). On appeal, the trial court's findings of fact regarding the voluntariness of a statement will not be disturbed absent an abuse of discretion. *State v. Kennedy,* 333 S.C. 426, 429, 510 S.E.2d 714, 715 (1998).

At a pre-trial hearing to determine the voluntariness of Ballington's statements, the defense called Dr. Harold Morgan, a forensic psychiatrist. Dr. Morgan testified that al-

though Ballington's cognitive abilities were intact on the day his wife died, his behavior indicated he was not rational. Ballington contends Detective Frier's admonition to tell the truth contradicted his right to remain silent, and when considered in light of his mental state, rendered his confession involuntary. However, Ballington's own expert testified his statements, although irrationally made, were voluntary. The detective merely advised Ballington his earlier statements were not consistent with the physical evidence, and that he should be honest. We do not believe Ballington's will was overborne by the detective's comment, even considering his irrational mental state.[3] Considering the totality of the circumstances, the State proved by a preponderance of the evidence that Ballington's confession was voluntary and the trial court thus properly admitted it.

## III. Directed Verdict

Finally, Ballington argues the trial court should have directed a verdict of not guilty on the murder charge. He admits he killed Wife, but argues the State failed to show he killed her with malice aforethought. We disagree.

In ruling on a motion for a directed verdict, the trial court is concerned with the existence or non-existence of evidence, not its weight. *State v. Fennell,* 340 S.C. 266, 270, 531 S.E.2d 512, 514 (2000). The trial judge should grant a directed verdict motion where the evidence merely raises a suspicion that the accused is guilty. *State v. Mitchell,* 341 S.C. 406, 409, 535 S.E.2d 126, 127 (2000); *State v. Schrock,* 283 S.C. 129, 132, 322 S.E.2d 450, 452 (1984). However, the judge should deny the motion if there is any direct or substantial circumstantial evidence which reasonably tends to prove the

---

3. Federal courts have held it is permissible to tell a suspect he must tell the truth if he is going to say anything. *See United States v. Braxton,* 112 F.3d 777, 782 (4th Cir.1997) (stating officer's statement of the sentence a suspect could receive if he did not tell the truth did not render subsequent confession invalid; officer did not indicate suspect had a duty to speak but merely said if he did speak, he must tell the truth); *United States v. Vera,* 701 F.2d 1349, 1364 (11th Cir.1983) ("[A] mere admonition to the accused to tell the truth does not render a confession involuntary."); *Rivers v. United States,* 400 F.2d 935, 943 (5th Cir.1968) (stating officer's admonition to suspect to tell the truth did not render statement invalid).

accused's guilt, or from which his guilt may be fairly and logically deduced. *Fennell,* 340 S.C. at 270, 531 S.E.2d at 514. When reviewing the denial of a directed verdict motion, the appellate court must view the evidence in the light most favorable to the State. *Mitchell,* 341 S.C. at 409, 535 S.E.2d at 127.

" 'Murder' is the killing of any person with malice aforethought, either express or implied." S.C.Code Ann. § 16–3–10 (1985). " 'Malice' is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong." *State v. Kelsey,* 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998). Malice may be implied by the use of brute force. *State v. McLemore,* 310 S.C. 91, 92, 425 S.E.2d 752, 753 (Ct.App.1992). It may also be implied by the use of a deadly weapon. *Id.* Under some circumstances, a fist or hand may be considered a deadly weapon. *State v. Bennett,* 328 S.C. at 262–63, 493 S.E.2d 845, 851 (1997); *State v. Davis,* 309 S.C. 326, 343, 422 S.E.2d 133, 144 (1992), *overruled on other grounds by Brightman v. State,* 336 S.C. 348, 352, 520 S.E.2d 614, 616 (1999). Finally, " '[e]ven though malice must be aforethought,' " there is no requirement that it " 'must exist for any appreciable length of time before the commission of the act.' " *State v. Fuller,* 229 S.C. 439, 446, 93 S.E.2d 463, 467 (1956).

Wife died of strangulation. An x-shaped abrasion on the front of her neck likely resulted from pressure placed against the seam of her blouse and her attempts to free herself. A fingernail impression was also located on her neck. The pressure on her neck was intense enough, or lasted long enough, to cause hemorrhages in the whites of both her eyes. Bruises to her neck muscles indicate she was strangled for a long time past consciousness. She had blunt-force injuries on her left and right cheeks, and above her left eye. Some of those injuries appeared to have been caused by fingertips or knuckles. A small blunt-force trauma located on her right ear may have caused her to lose balance or consciousness. An abrasion appeared on her left collar bone. Bruises on her right shoulder were consistent with strong pressure applied by knuckles or fingertips. She suffered numerous bruises to her arms and abrasions to her left hand, indicating she tried to defend herself. Additionally, small bruises and abrasions

were found on top of her feet and a small bruise was located on her right leg.

This evidence permits the conclusion that Wife was severely beaten and strangled for an extended period of time. Viewed in the light most favorable to the State, we find the testimony regarding Wife's injuries, as well as the force necessary to cause these injuries, constituted sufficient evidence of malice to support the trial court's refusal to grant a directed verdict.

In addition, evidence Ballington attempted to cover up how his wife died suggests he killed her with a wicked or depraved spirit. *See Arnold v. State*, 309 S.C. 157, 169, 420 S.E.2d 834, 841 (1992) (including attempt by defendant to mislead police as to who committed crime as one indicator of malice); *see also State v. Judge*, 38 S.E.2d 715, 719, 208 S.C. 497, 505 (1946) (defining malice as "a wicked condition of the heart ... a wicked purpose ... a performed purpose to do a wrongful act"). Ballington left his home after attacking Wife and went back to his workplace. While there, he washed his shirt and a bloody towel. When he learned she had not returned to work, he asked her employers if they had tried phoning her at his home. When Ballington borrowed a car to return home, he said he was concerned because he could not reach Wife by phone. He said she had been ill. Ballington then returned to the home and led authorities to believe his wife fell down the stairs. The location of one shoe on a stair several steps above her body permits the inference he placed it there to stage a fall. In addition to Wife's injuries and the force necessary to inflict them, Ballington's attempt to mislead others as to the cause of his wife's death is also evidence he killed her with malice.

## CONCLUSION

For the reasons discussed, Ballington's conviction and sentence are

**AFFIRMED.**

CURETON and SHULER, JJ., concur.