THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2),
SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Kevin Allen Chase, Appellant.
 
 
 

Appeal From Charleston County
Deadra L. Jefferson, Circuit Court Judge

Unpublished Opinion No. 2011-UP-210
Heard October 6, 2010  Filed May 11, 2011

AFFIRMED

 
 
 
 Tara Shurling, of Columbia, for Appellant.
 Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney
 General William M. Blitch, Jr., of Columbia, for Respondent.
 
 
 

FEW, C.J.:  Kevin Chase was convicted of criminal domestic violence of a high and aggravated nature (CDVHAN) and sentenced to ten years in
prison.  He was acquitted on charges of criminal sexual conduct in the first and third degree.  We affirm.
FACTS/PROCEDURAL HISTORY
Chase and the victim, Mary Chase, were married but estranged at the time of the incident.  On May 28, 2002, Chase went to the victim's home to see his
children.  After the children were asleep, the victim was in her bedroom folding laundry when Chase walked up behind her and choked her with his arm until
she passed out.[1]  When the victim awoke, she was face down on the bed.  She pulled away from Chase who
was behind her.  Chase "punched hard" until his fist was inserted into her vagina.  He remarked, "[t]here, it's in." 
The victim stood up and leaned against a door in her bedroom.  She testified that she looked down and could see blood "spurting and just running
across the floor."  She told Chase, "I think I'm going to die."  Chase placed her on the toilet in the bathroom and inserted tampons
inside her vagina to try to stop the bleeding.  Eventually, Chase took her to the hospital. 
The victim's surgeon testified that he "attempted a vaginal examination, but it was too uncomfortable for her in the emergency room and also she was
bleeding so heavily that [he] felt [he] needed to emergently go to the operating room to assess the problem."  He explained that the victim lost half
of her blood volume, which left her in shock.  She suffered a laceration that extended from the inside of her vagina to her cervix and was approximately
five inches long and three and one-half inches deep.  The surgeon testified that the laceration was so deep that he could "see her spine or basically
part of her tailbone." 
LAW/ANALYSIS
1.  Motion for Recusal
Chase contends the trial court erred in denying his motion to recuse the trial judge.  The judge who presided over Chase's trial also heard argument in
a pre-trial hearing regarding the admissibility of videotapes of the defendant and the victim engaging in prior sexual activity.  The judge declined to
rule pre-trial but indicated that her "inclination at [that] point [was] that they would not come in."  The judge thought that the ruling should
be made "in the context of the case and the testimony . . . ."  Chase claims that the State engaged in judge shopping by using its control over
the docket to ensure that the trial was scheduled in front of the pre-trial hearing judge.  Though Chase conceded he had no complaint with the trial judge
and did not claim the judge would be unfair, he argued that the State only presented possible trial dates during that judge's terms of court.  The judge
denied Chase's motion for recusal finding that there was no evidence of judge shopping. 
We affirm for two reasons.  First, the judge's inclination on the admissibility of the videotapes was insufficient to support a motion to recuse. 
"A motion to recuse may not be predicated upon the judge's rulings in the case before him . . . nor on his demonstrated tendency to rule in any particular
manner . . . ."  Mallett v. Mallett, 323 S.C. 141, 146-47, 473 S.E.2d 804, 808 (Ct. App. 1996).  Second, Chase admitted that he did not
think the judge would be unfair or partial.  If Chase was unhappy with the delay, he could have made a motion for a speedy trial to address his complaint
that "the State's control over the docket was exercised in a manner that deprived [Chase] of his right to due process of law." 
2.  Exclusion of Videotapes
Chase contends that excluding videotapes of he and the victim engaged in previous consensual choking and fisting sexual activity was error.  At trial,
Chase argued that the videotapes were admissible to prove consent.  The trial judge ruled that the videotapes were inadmissible under the Rape Shield
Statute.  The judge explained "[w]hether [the victim] consented a hundred times in the past to a particular activity is not relevant or probative on
the issue of whether she consented that particular night."  While the trial court found that the activity on the videotapes was relevant to the
defense of accident or mistake, the judge found that the probative value was outweighed by the inflammatory or prejudicial nature of the videotapes. 

 The Rape Shield Statute states, in relevant part:
 
 Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's
 sexual conduct is not admissible in prosecutions under Sections 16-3-615 and 16-3-652 to 16-3-656; however, evidence of the victim's sexual conduct with the
 defendant . . . is admissible if the judge finds that such evidence is relevant to a material fact and issue in the case and that its inflammatory or
 prejudicial nature does not outweigh its probative value.  
 

S.C. Code Ann. § 16-3-659.1(1) (2003).
We find the trial court's analysis under the Rape Shield Statute was correct.  The judge first found the evidence contained on the videotapes to be
relevant to a material fact and then engaged in the balancing that the Rape Shield Statute requires.  The trial judge concluded that the inflammatory or
prejudicial nature outweighed its probative value[2], and we find this was within the trial court's discretion.
However, the Rape Shield Statute applied only to the criminal sexual conduct charges and did not apply to the CDVHAN[3]
charge, which is the only charge relevant to this appeal.  Chase argued the admissibility of the videotapes to the trial judge only under the Rape Shield
Statute, and the judge ruled only under the Rape Shield Statute.  Thus, it was incumbent upon Chase to seek an additional ruling under Rule 403, SCRE and
any argument regarding admissibility of the videotapes as they relate to CDVHAN is not preserved for our review.  State v. Dunbar, 356 S.C. 138,
142, 587 S.E.2d 691, 693-94 (2003) (holding that an issue must be raised and ruled upon by the trial judge to preserve it for appellate review). 
3.  Admission of Blood-Stained Items
Chase argues that the trial court erred in admitting evidence of blood-stained clothing and bedding.  Chase argued that the probative value of the
evidence was "fairly weak" compared to the unfair prejudice of the jury seeing the items covered in blood.  Because the CDVHAN charge requires
proof of a serious bodily injury, Chase also offered to stipulate that the victim received a "violent injury that would meet the definition of the CDVHAN
statute" in lieu of introducing the blood-stained items.  The State argued that "[t]he fact that there is blood all over the clothes is very,
very important to the State's case because it shows that [the victim's] story is consistent" and that Chase and the victim were not engaged in consensual
sex.  The State declined to stipulate to the serious bodily injury.  On appeal, Chase argues that this evidence was cumulative and unfairly
prejudicial, and therefore inadmissible under Rule 403, SCRE.[4] 
Rule 403, SCRE states "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative
evidence."  A trial judge's evidentiary rulings will not be reversed on appeal absent an abuse of discretion.  State v. Saltz, 346 S.C.
114, 121, 551 S.E.2d 240, 244 (2001).  
                                                                  
i.                        Cumulative
Analysis
We disagree with Chase's argument that the evidence should have been excluded as cumulative.  The mere fact that admitted evidence was cumulative is not
alone sufficient to sustain a Rule 403, SCRE objection.  Rather, analysis under this prong of Rule 403, SCRE requires consideration of whether the evidence
is a "needless presentation of cumulative evidence."  We agree, for example, that the surgeon's testimony about the amount of blood the victim
lost immediately after the attack coupled with the presentation of the victim's blood-stained bedding is cumulative to other evidence.  However, we
conclude that providing the jury with a medical explanation of the injuries and a visual demonstration of how much blood the victim lost presented a complete
picture of the injuries.  Thus, it was within the trial court's discretion to find that the presentation "goes to the evidence of establishing an
essential element of the offense." 
                                                               
ii.                        Unfair
Prejudice Analysis
The ruling not to exclude the blood-stained items on the basis of unfair prejudice was within the trial court's discretion.  The probative value of
blood-stained items is high.  A CDVHAN charge is a combination of criminal domestic violence[5] and assault and
battery of a high and aggravated nature.  ABHAN is "an unlawful act or injury" accompanied by an aggravating circumstance.  State v.
Fennell, 340 S.C. 266, 274, 531 S.E.2d 512, 516 (2000).  The aggravating circumstance articulated in the State's case was the infliction of serious
bodily injury.  340 S.C. at 274, 531 S.E.2d at 516-17 (listing aggravating circumstances).  The State had the burden of proving that Chase inflicted a
serious bodily injury on the victim.
First, the State presented the surgeon's testimony that the victim's pain coupled with the amount of blood she lost made it impossible for him to perform a
complete medical exam in the emergency room.  This testimony as well as the visibility of the blood on the bedding and clothing indicates that Chase's
actions were not accidental but done with force sufficient to cause serious injury.  The blood-stained items supported the seriousness of the injuries the
surgeon described.  Thus, the evidence is highly probative of an essential element of CDVHAN.
We recognize there is also prejudice associated with the blood-stained items.  However, we conclude that the trial judge properly conducted the
balancing analysis of the probative value of the blood-stained items and the potential prejudice.[6]  The ruling
was within the trial court's discretion. 
4.  Motion for Mistrial
Chase contends that the trial court erred in denying his motion for a mistrial.  We disagree.  The victim testified about her injuries and her
recovery process beginning on the second day of Chase's trial.  On the morning of the third day of the trial, the jury foreperson explained to the trial
court that he had prostate cancer and still has some of the "same complications that [the victim has]."  He stated that he could no longer be
fair and impartial and was excused from the jury. 
The foreman also stated that he told the other members of the jury about the impact of his medical condition on his ability to serve.  Chase moved for a
mistrial and his motion was denied.  However, the trial judge questioned each juror individually to determine what each heard the foreperson say.  All
of the jurors indicated that the foreperson commented about his health conditions.  One juror told the court that the foreperson said "the defense
would have to make a really good case" and explained that there was "[s]ome head nodding, thats about all" in response to the foreperson's
comment.  Nevertheless, each juror indicated that he or she could remain fair and impartial. 
After the colloquy with the members of the jury, Chase again moved for a mistrial.  The trial court again denied the motion, finding that a mistrial is
not required when all members of a jury indicate they can remain impartial.  A trial judge's ruling on a motion for mistrial will not be disturbed absent
an abuse of discretion amounting to an error of law.  State v. Sparkman, 358 S.C. 491, 495, 596 S.E.2d 375, 377 (2004).  "A mistrial
should only be granted in cases of manifest necessity and with the greatest caution for very plain and obvious reasons."  State v. Patterson,
337 S.C. 215, 227, 522 S.E.2d 845, 851 (Ct. App. 1999).  "[T]he conduct of jurors should be free from all extraneous or improper influences. 
Unless the misconduct affects the juror's impartiality, it is not such misconduct as will affect the verdict."  State v. Kelly, 331 S.C. 132,
141, 502 S.E.2d 99, 104 (1998).  We find that it was within the judge's discretion to determine that the foreperson's statements did not improperly
influence the jury and that the trial court did not abuse its discretion in denying Chase's motion for a mistrial.
5.  Admission of Prior Bad Act Evidence
Chase contends that the trial court erred in admitting prior bad act evidence of domestic disputes between him and the victim.  The State called
Sergeant Robert Walker to testify about his search of the victim's residence on the night of the offense.  On cross examination, Chase asked "[d]o you
have any evidence whatsoever that there was any criminal domestic violence in that home ever, any phone calls to the police or any investigators called out, any
complaint to anybody?"  Walker replied, "I believe we do have  I don't know if its involving Mr. Chase, but we do have reports of a prior
incident involving Mrs. Chase prior to this, yes."  After Walker testified, the State argued that Chase opened the door, and sought to explore
criminal domestic violence in the Chase household with the next witness, Detective Michael Anderson.  The judge ruled:

 You asked the question.  You asked if they had gone out to a prior domestic violence call, now it's in the air.  He says to his knowledge they
 did go, but that it involved Ms. Chase.  That then leaves this unanswered, open-ended question in the jury's mind about why they go there, for what
 purpose did they go, did it involve her and someone else.  They're entitled to answer that.  You did open the door.

Outside the presence of the jury, the State explained that Anderson had suspicions of domestic violence when he initially went to the Chase home to
investigate a reported burglary.  After the victim reported that Chase had child pornography on his computer, Anderson asked the victim's advocate to
accompany him to the Chase home to ask Mrs. Chase about domestic violence.  The judge agreed to let the State explore the domestic violence issue but ruled
that any questioning about child pornography was "off limits."  The State then called Detective Anderson.  He testified that in 2001 he
responded to a call that the Chase home had been burglarized.  He explained that he returned to the Chase residence several times during the course of the
burglary investigation.  The State asked, "[d]id you ever bring a victim advocate with you?"  Anderson responded, "[y]es, sir.  I
did."  No additional testimony about his suspicions of domestic violence was elicited.
Rule 404(b), SCRE states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action
in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident,
or intent."  However, when one party introduces evidence, or opens the door, the other party is entitled to "explain it or rebut it, even if the
latter evidence would have been . . . irrelevant had it been offered initially."  State v. Beam, 336 S.C. 45, 52, 518 S.E.2d 297, 301 (Ct. App.
1999).  We affirm for two reasons.  First, the judge's ruling that Chase opened the door to the State's exploration of past criminal domestic violence
disputes involving Chase and the victim was within her discretion.  Second, the testimony the State elicited from Detective Anderson after Chase opened the
door was not evidence of other crimes, wrongs or acts.  The evidence does not indicate that Chase was suspected of domestic violence and only indicates
that Anderson asked a victim's advocate to accompany him to the Chases' home.  The State did not explore the criminal domestic violence issue any further
and Chase did not clarify Anderson's testimony on cross-examination.
6.  Exclusion of Audiotaped Conversations
Chase contends the trial judge erred in excluding portions of audiotapes of conversations between him and the victim that occurred approximately four to six
weeks after the incident.  The State objected to any portion of the tapes being played for the jury.  The trial court ruled:

 Anything that deals with the actual sexual acts, anything that deals with the custody battle, all of that is clearly being offered for its truth. 
 [Chase's] theory is that [the victim] had an alternative motive, that she fabricated all of this to get some leverage in the custody battle.  So the only
 reason you would be offering a conversation between the two of them on this tape about custody would be for the truth of the matter asserted and its
 hearsay.  And unless you can give me an exception, it's not admissible.
 .  .  .  
 I told you that you could offer it to show their tone as long as its not being offered for its truth.  . . .  There are many parts of this tape
 you can choose to play that shows their tone with one another, I've told you that is fine, you can play that.

Chase argues that the trial judge erred in excluding any portion of the audiotapes because the conversations show "that the victim and the Appellant
were engaging in overarching discussion about every aspect of their daily lives at that point in time."  Chase contends the entirety of the tapes
showed both humorous and serious conversations that were relevant to show the nature of the relationship after the incident.  We find the judge's ruling on
the admissibility of the audiotapes did not prevent Chase from demonstrating the nature of the conversations he had with the victim.   
First, the trial court's limitation on how much of the audiotape was played to the jury was partially based on trial management.  This was within the
judge's discretion under Rule 611(a), SCRE.[7]  Chase argued that the conversations were offered only to
demonstrate the tone and nature of the communications between Chase and the victim.  The trial judge explained, "[w]ell, we don't need to hear the
whole tape to hear their tones.  I mean, I've heard enough to know what their tone is with one another." 
Second, the judge's trial management ruling did not prevent Chase from demonstrating the "serious" nature of the relationship he had with the
victim.  The trial court excluded only portions of the audiotape that referred to the custody battle, the incident, and statements about his bond. 
The trial court did not exclude any other portion of the audiotape at the outset, providing Chase with "approximately 200 pages of transcript which talk
about other things."  Further, the admitted portions included more serious conversations between Chase and the victim.  Thus, Chase was not
prevented from presenting evidence of serious conversations with the victim and he was able show the full nature of their conversations.
Third, because the admitted portions of the tape accomplished Chase's goal, the trial judge concluded that admitting any additional portions of the tapes
served no purpose other than to prove the truth of the statements.  Based on this analysis, the trial judge was within her discretion in ruling that
statements by the victim related to the night of the incident, the custody dispute and the status of Chase's bond would be hearsay under Rule 801(c), SCRE.
 
7.  Limit on Testimony About Victim's Motivation to Fabricate Offense
Chase contends that the trial court erred in limiting testimony about the victim's potential motive for fabricating the charges, in violation of his Sixth
Amendment right to present a complete defense.  In a pre-trial motion, the judge ruled that while Chase was entitled to explore the victim's bias and
motivation to lie about the incident, he was prohibited from exploring specific incidents of conduct that occurred during the custody dispute between Chase and
the victim over Chase's daughter, Kalei.  Chase sought to introduce testimony from Amy Lynch, Lindy Clifton, and Carolyn Berlin.  We hold the
limitations the trial judge imposed on the presentation of each witness's testimony were within her discretion.
                                                                  
i.                        Amy Lynch
Amy Lynch, Kalei's biological mother, testified about her conspiracy with the victim to keep Chase from taking Kalei out of state.  She testified, in
part:

 We both came up with a plan to keep Kevin away from Kalei, to keep him from being able to come get her.  . . .  We were determined . . . to get
 his rights revoked.  . . .  And we would sit down and talk about what we were going to say on these recorded phone conversations.  . . . 
 I would say bad things about Kevin that weren't true, but I was determined . . . to get him out of my daughter's life at that point.

First, the objections and rulings as to Amy Lynch's testimony listed in Chase's brief concern hearsay.  However, Chase makes no argument on appeal that
the judge erred in ruling that the statements were inadmissible as hearsay.  Thus, these rulings stand as the law of the case.  State v. Sampson,
317 S.C. 423, 427, 454 S.E.2d 721, 723 (Ct. App. 2005).  As to the merits, a ruling that a statement constitutes inadmissible hearsay does not violate a
defendant's constitutional right to present a defense.  While a criminal defendant has a constitutional right to present witnesses in his defense, Crane
v. Kentucky, 476 U.S. 683, 687 (1986), the right to introduce even relevant evidence "is not unlimited, but rather is subject to reasonable
restrictions."  U.S. v. Scheffer, 523 U.S. 303, 308 (1998).  The exclusion of testimony based on state evidence law does not violate the
defendant's constitutional right to present evidence so long as the evidence law is "not arbitrary or disproportionate to the purposes it is designed to
serve."  Id. at 308 (internal quotations omitted).
Second, Chase argues that the trial judge's ruling interfered with his ability to prove that the victim had a motive to lie about the choking and fisting
incident.  However, we find Chase was able to elicit ample testimony from Lynch about her conspiracy with the victim to lie about Chase in order to
influence the custody dispute over Kalei.  Further, the trial court's decision to exclude wide-ranging testimony about conduct of the parties during the
custody battle was within her discretion under Rule 611(a), SCRE.
                                                               
ii.                        Lindy
Clifton
Lindy Clifton, a certified child trauma specialist, was permitted to testify regarding Kalei's display of trauma symptoms related to domestic violence and
about the relationship between the child and the victim.  As the testimony was presented at trial, the trial judge explained:

 I am not going to allow them to rehash the custody case.  I'm not going to retry the custody case.  Quite frankly, it is not relevant to these
 proceedings except to the limited extent of any motivation Ms. Chase may have and any  as the defense contends, and any bearing that may have on her
 credibility, her believability, her reliability, her veracity as a witness.

We find it was within the trial court's discretion to determine that the bond between Chase and his daughter as well as the custody battle should be excluded
under the court's Rule 611(a), SCRE, trial management authority.
                                                            
iii.                        Carolyn
Berlin
Chase also sought to offer Carolyn Berlin's testimony to impeach the victim's credibility.  Specifically, Chase wanted Berlin to testify about whether
the victim was drugged by Chase on the night of the incident and whether the victim willingly used GHB.  Chase also sought to have Berlin testify about the
victim's attempts to influence the custody case.  The trial court refused to permit Berlin to testify about the custody case.  After reviewing the
victim's testimony and asking the court reporter to verify, the trial court concluded that Chase did not ask the victim about drug usage.  As a result, the
trial court ruled that Berlin's testimony could not be used to impeach the victim's statements about drug usage because the victim was never asked to admit or
deny the statements during Chase's cross-examination.  We conclude that the trial court's ruling prohibiting testimony about drug usage was correct under
Rule 613(b), SCRE.[8] 
8.  Jury Charge and Jury Question
Chase argues that the trial court erred in failing to give a charge on specific intent on the CDVHAN charge and erred in failing to define terms requested by
the jury during deliberation.  We disagree.  When discussing requests for charge, Chase stated:

 I would ask the Court charge with each element of the offense the actor would have to have criminal intent  Judge I would just ask regarding the mens
 rea requirement that the jury be charged that the defendant to be guilty of a criminal act must also have a criminal intent, and in this case with these
 charges he must act knowingly and intentionally with regard to each element of the offense.

The trial court found "the statutory language is adequate and . . . I'm going charge the statute."  A trial court is generally required to
charge only the current and correct law.  Sheppard v. State, 357 S.C. 646, 665, 594 S.E.2d 462, 472-73 (2004).  A jury charge is correct if it
contains the correct definition of law when read as a whole.  State v. Rayfield, 369 S.C. 106, 119, 631 S.E.2d 244, 251 (2006).  We find that
the jury charge was a correct statement of the law.
The goal of Chase's request for a charge on criminal intent was accomplished by the charge.  The jury charge properly connected the definition of
assault with the definition of battery.  First, the trial court explained, "[a]n assault is the intentional creation of a reasonable fear of immediate
bodily harm."  Then, she defined battery, "[a] battery is the completion of the assault by using or applying force to another person, however
slight, in a rude, angry or resentful manner without legal justification for doing so." 
By connecting the definitions of assault and battery in this way, the judge defined the mental state the State must prove to differentiate what activity is
criminal and what activity is consensual.  This instruction informed the jury that in order to find that Chase was guilty of CDVHAN, the State had to prove
that Chase committed an intentional assault by applying force in a "rude, angry, or resentful manner." 
Chase failed to submit his criminal intent charge request to the court in writing, even after the trial court requested it at multiple points in the trial as
she expressed concern about whether the requested charge was appropriate.  If Chase wanted a more tailored instruction than the instruction the trial judge
gave to the jury, he should have been more specific in his oral request, or he should have submitted a written request to the court.
During deliberation, the jury sent the court a note asking for definitions of the terms "intentional" and "willful."[9]  The judge answered the jury as follows:

 The elements of each offense and the relevant definitions have been provided to you within the Court's charge on the law.  This is the law that you
 are to apply in this case.  If you desire to rehear the charge or any portion of the charge, please make me aware of it and I will accommodate your
 request immediately. 

We find that this response was within the trial court's discretion.
AFFIRMED.
HUFF and GEATHERS, JJ., concur.

[1] Both parties testified that they previously engaged in autoerotic asphyxiation of the victim by Chase and
vaginal insertion of Chase's fist as part of their sexual relationship.
[2] The balancing test under the Rape Shield Statute is different from the balancing test under Rule 403, SCRE. 
While evidence may be excluded under the Rape Shield Statute if the "inflammatory or prejudicial nature" outweighs the probative value, evidence may
be excluded under Rule 403 only if the danger of unfair prejudice substantially outweighs the probative value.
[3] S.C. Code Ann. § 16-25-65(A) (2003).  
[4] Chase also argues that the fact that the foreperson asked to be excused after hearing the victim's testimony
indicates the inflammatory nature of the evidence.  This issue was not raised to or ruled on by the trial court.  Thus, we conclude it is not
preserved for our review.  Dunbar, 356 S.C. at 142, 587 S.E.2d at 693-94.
[5] Criminal domestic violence is "caus[ing] physical harm or injury to a person's own household
member."  S.C. Code Ann. § 16-25-20(A) (Supp. 2010).
[6] See generally State v. Simmons 384 S.C. 145, 161, 682 S.E.2d 19, 27 (Ct. App. 2009) (noting that
while blood evidence is prejudicial, it is not necessarily unduly so).
[7] Rule 611(a), SCRE states "[t]he court shall exercise reasonable control over the mode and order of
interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid
needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."
[8] Rule 613(b), SCRE states in part that "[e]xtrinsic evidence of a prior inconsistent statement by a
witness is not admissible unless the witness is advised of the substance of the statement, the time and place it was allegedly made, and the person to whom it
was made, and is given the opportunity to explain or deny the statement."
[9]  In determining the appropriate response, the following discussion occurred:

 Chase:   I just want to preserve my objection with regard to my request for a mens rea charge, but as long as I'm preserving that -
 
 
 Court:    If you want me to charge this jury . . . that negligence constitutes criminal intent, I'll accommodate you.
 Chase:  Oh, that's not what I want.
 Court:   Okay.  That's what my general charge says.  And you didn't provide me with a proposed one so you  like I said, you left me
 at a great deficit.