15289

STATE v. HEYWARD

(15 S. E. (2d), 669)

372

Spring Term, 1940.

*Mr. Joseph Murray,* of Columbia, for appellant,

*Mr. Randolph Murdaugh, Jr.,* Solicitor, for respondent,

July 7, 1941.

The opinion of the Court was delivered by MR. ASSOCI-ATE JUSTICE CARTER.

The record discloses the following facts leading up to the killing of Paul B. Cardin, and which are essential to an understanding of the case: That deceased, a rural policeman of Beaufort County, accompanied W. H. Randall, a magistrate's constable, to the Seabrook community of Beaufort County, where Mr. Randall was going for the purpose of arresting Willie Heyward for whom Mr. Randall had a warrant charging a misdemeanor; that they took along with them a small Negro boy, Paul Middleton; that Willie Heyward and defendant, who were brothers, lived in the same community but in different houses; that deceased and his companions stopped at the home of the defendant for the purpose of getting information as to the house in which Willie Heyward lived, parking their automobile to the front and side of the house; that defendant was at his home when they arrived there; that the two officers got out of the automobile, deceased going to the front door of defendant's home while the constable went to the rear door; that Paul Middleton, who was left in the car, could see the front door and also hear anything that might be said; that the officers had no warrant for the arrest of defendant; that when deceased reached the front door it was opened and a shot gun

was fired from the inside of the house by the defendant and the deceased received a load of number four shot in his stomach from which he immediately died. It was also conceded that the homicide occurred about 5 o'clock in the afternoon.

At the spring, 1940, term of the Court of General Sessions defendant was tried before Hon. L. D. Lide on an indictment charging him with the murder of deceased. Upon being arraigned he plead not guilty, and interposed the pleas of self-defense and the defense of the home; and also plead that the killing was both accidental and justifiable. The jury, however, convicted him of the crime charged and he was sentenced to death.

Defendant now appeals to this Court, imputing error to the trial Judge (1) in refusing to direct a verdict of not guilty; (2) in failing to charge certain requests to·charge; and (3) in not granting his motion for a new trial.

As to the first question: Appellant contends that the trial Judge should have directed a verdict of not guilty as to the charge of murder against him for the reason that "no malice had been proved by the State" but that "to the contrary all of the evidence tended to show and did show that deceased came to his death while in his act of an unlawful invasion of the home of appellant and that appellant had a legal right to defend himself and his home from and against such unlawful invasion thereof."

In the first place, was there an unlawful invasion of appellant's home by deceased? Appellant testified that deceased, without making his identity as an officer known and without hailing and informing appellant of his purpose in being there, came to appellant's front door, with his pistol in his hand, broke open the door and entered the house, all in violation of the statute expressly prohibiting such acts. Testimony for the State, however, is to the effect that when deceased went to appellant's door, he knocked thereon but that he did not open the door or attempt to enter; and that deceased's pistol was in its holster at his side. Under this conflict of testimony therefore, it was for the

jury to say whether there was such an unlawful invasion of appellant's home as would justify him in shooting as he did in defense of himself and of his home.

We will now turn to the decisions of the Court and to the testimony in order to ascertain whether there was any malice shown.

In *State v. Gallman*, 79 S. C., 229, 60 S. E., 682, 686, the following definition of malice was approved:

"It is a wicked condition of the heart. It is a wicked purpose. It is a performed purpose to do a wrongful act, without sufficient legal provocation; and in this case it would be an indication to do a wrongful act which resulted in the death of this man, without sufficient legal provocation, or just excuse, or legal excuse." Also in 29 C. J., 1084; "In its popular sense, the term 'malice' conveys the meaning of hatred, ill-will, or hostility toward another. In its legal sense, however, as it is employed in the description of murder, it does not of necessity import ill-will toward the individual injured, but signifies rather a general malignant recklessness of the lives and safety of others, or a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief; in other words, a malicious killing is where the act is done without legal justification, excuse, or extenuation, and malice has been frequently, substantially so defined as consisting of the intentional doing of a wrongful act toward another without legal justification or excuse."

Appellant testified that after his crop had been finished in the fall of 1925, he went to work for a Mr. Robinson on a State highway near Yemassee; that at Mr. Robinson's request, appellant secured other men to work on the same job; that appellant continued to work until a few days after Christmas when he quit; that while still on that job, he asked Mr. Robinson for $120.00 which that gentleman owed him for work done at a previous time, but that Mr. Robinson refused to pay him; that after quitting he went to see Mr. Robinson at Yemassee about the money owing him, at which

time Mr. Robinson told appellant that he had "been the cause of many of my hands leaving here" and that "he was not going to pay me anything, and I said, Mr. Robinson, if you work for a man and you are not satisfied with his work, the law says you pay him off and let him go, and he said, you see I do not have to pay you anything at all, and I said, I will go down and see the policeman, and he said, don't you know I can have you killed, and I said, Mr. Robinson, you don't have to do that, and he said, I have men to kill you and will not be much trouble in doing it"; that appellant started down to find the chief of police but that before reaching his destination, he saw Mr. Robinson with a crowd of men which he thought was a mob to execute Mr. Robinson's threat to kill him; that, therefore, instead of continuing his search for the policeman, he hid in a box car until later in the day when he went to his home; that a Negro, Allen Simmons, brought a message to him that Mr. Robinson was looking for him to kill him; that on the morning of the day of the shooting, Mr. Robinson came to his home but that he was so afraid that his life would be taken that he remained in his house with the doors bolted and the windows closed, and talked with Mr. Robinson without opening a door or window; that while at his home that morning, Mr. Robinson said that "I am going to get you because you caused all my hands to quit my job, as I have a man picked out and he is going to kill you"; and that, therefore, when deceased, and the others with him, came to appellant's home on the afternoon of the same day, he believed that they had come there to execute Mr. Robinson's threat to kill him or to have him killed and that he in mortal terror, shot deceased, believing him to be Mr. Robinson, his former employer.

It is true, as urged by appellant, that it was not made to appear that appellant knew deceased or that deceased knew appellant. Appellant contends that the shooting was accidental, for the reason that he did not know deceased and, therefore, had no ill-will against him. How-

ever, it is a well-settled principle of law that where a slayer designs or intends to kill one person but, through mistake, kills another, "his crime is the same as if he had executed his intended purpose." *State v. Smith,* 2 Strob., 77, 47 Am. Dec., 589; *State v. Kennedy,* 85 S. C., 146, 67 S. E., 152, 26 Am. Jur., 179, Annotation, 18 A. L. R., 917. If there was malice in appellant's heart, he was guilty of the crime charged, it matters not whether he killed his intended victim or a third person through mistake. Our inquiry, therefore, will be whether there was such legal justification or excuse for the shooting as would eliminate the element of malice.

In 13 R. C. L., 821, we find the following: "A person whose life has been threatened by another, who he knows, or has reason to believe, has armed himself for the avowed purpose of taking his life, or inflicting a great personal injury upon him, may reasonably infer, when a hostile meeting occurs, that his adversary intends to carry his threats into execution. The previous threats alone, however, unless coupled at the time with an apparent design to carry them into effect, will not justify a deadly assault by the other party. There must be such a demonstration of an immediate intention to execute the threat, as to induce a reasonable belief that the party threatened will lose his life, or suffer serious bodily injury unless he immediately defends himself against the attack of his adversary. The philosophy of the law on this point is sufficiently plain. A previous threat alone, and unaccompanied by any immediate demonstration of force at the time of the encounter, will not justify or excuse an assault, because it may be that the party making the threat had relented or abandoned his purpose, or his courage may have failed, or the threat may have been only idle gasconade, made without any purpose to execute it."

Under the testimony, therefore, did appellant have reason to believe that his life was in imminent danger of being taken? Were there such acts on the part of deceased as could reasonably lead appellant to believe that

the threat against him would then and there be executed? We will recapitulate a portion of the testimony here. The State's witnesses testified to the effect that deceased went to the front door of appellant's house and knocked thereon, making no attempt to actually open the door; that deceased's pistol was not in his hand at the time but that it was in its holster at his side; that the magistrate's constable, Mr. Randall, whom deceased accompanied to appellant's home, went to the back of the house but that, at the time of the shooting, he did not have a gun in his hand but was, instead, lighting a cigar. Appellant testified that deceased, with his pistol in his hand, broke open the front door. The statute does not provide that an officer who knocks on a person's front door does so at his own risk, nor that the person living in the house, hearing the officer knock and not giving such officer time to make his presence and purpose known, is exonerated if he harms the officer. Therefore, even should we concede that appellant's life had been threatened as contended by him, this Court cannot say as a matter of law, that he was justified or excused in shooting as he did. The jury must decide whether there was "such a demonstration of an immediate intention to execute the threat" as would justify or excuse the killing; in other words, it was for the jury to say whether there was malice in the heart of appellant at the time of the shooting.

As to the second question: Appellant urges that certain requests submitted by him should have been charged by the trial Judge, and that, therefore, upon his failure to do so, the jury was not fully and clearly instructed with "reference to the rights of a person in defense of his home, in defense of himself and his children within his home, and the rights and duties of officers in making arrests of persons unknown to them."

We do not think there is any merit in this contention. A reading of the charge as a whole shows that those portions of the requests which contained proper instructions had al-

ready been clearly charged. The trial Judge had already instructed the jury on all material issues raised, and appellant's rights had been fully explained.

Appellant's third specification of error, that the trial Judge abused his discretion in refusing to grant a new trial on the ground that the verdict was unsupported by the evidence and thus the result of caprice, is also groundless. The granting of a new trial rests in the discretion of the trial Judge. *State v. Hayes,* 69 S. C., 295, 48 S. E., 251. It is also well settled, as held in that case, that the weight and sufficiency of evidence is for the jury. We have already held that the testimony required the submission of the question of malice to the jury. It was, therefore, the province of that body to weigh the evidence and decide on its sufficiency in reaching a verdict. They having found defendant guilty, this Court cannot say that there was an abuse of discretion, as contended.

All of the exceptions are overruled and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER, FISHBURNE and STUKES concur.