531 S.E.2d 512

**The STATE, Respondent,**

v.

**John Bennett FENNELL, Appellant.**

**No. 25097.**

Supreme Court of South Carolina.

Heard Feb. 1, 2000.

Filed March 27, 2000.

Refiled May 1, 2000.

268

Assistant Appellate Defender Aileen P. Clare of the South Carolina Office of Appellate Defense, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Jeffrey A. Jacobs, all of Columbia, and Solicitor John R. Justice of Chester, for respondent.

## ORDER

We withdraw *State v. Fennell,* Op. No. 25097 (S.C. Sup.Ct. filed March 27, 2000) (Shearouse Adv. Sh. No. 12 at 43). We hereby substitute in its place the attached opinion.

IT IS SO ORDERED.

/s/ Jean H. Toal, C.J.
/s/ James E. Moore, J.
/s/ John H. Waller, Jr., J.
/s/ E.C. Burnett, III, J.
/s/ Costa M. Pleicones, J.

WALLER, Justice:

John Bennett Fennell (appellant) was indicted for the murder of one man and the assault and battery with intent to kill (ABIK) of a second man. A jury found him guilty but mentally ill on both charges. He was sentenced to life in prison for murder and twenty years for ABIK. We affirm.

## FACTS

Appellant was diagnosed as suffering from paranoid schizophrenia in 1984. Appellant's illness led to the loss of his job as an accountant, a divorce, and his decision to move from Columbia back to Chester County to live with his elderly mother. Appellant joined the Chester Civitan Club and was appointed to oversee its "candy box" program. He was responsible for collecting money from boxes left in stores, replenishing the candy, and making deposits. He took the job very seriously and usually performed it well.

In fall 1996, William R. Thrailkill, the owner of a home remodeling business and a Civitan Club member also involved in the candy box program, and appellant had a dispute about an empty candy box at a local store. The argument angered and upset appellant.

At a Civitan Club meeting at a restaurant about two weeks later, neither appellant nor Thrailkill initially appeared upset. Appellant approached Thrailkill to discuss the candy box matter again as Thrailkill, his son, and other members formed a line at the buffet. Thrailkill refused to discuss it and made a disparaging remark that angered appellant. Appellant immediately left the room and retrieved a .38–caliber revolver from his car. Appellant strode back into the restaurant, declaring he was "going to kill that son of a bitch." He emptied his gun at Thrailkill, striking him with five shots. Thrailkill died at a

hospital two months later from complications caused by his injuries.

A stray bullet struck Elihue Armstrong, a semi-retired grocer and barber who was standing nearby, in the right arm and chest. Armstrong survived the injuries. Appellant told a psychiatrist that he did not intend to injure Armstrong.

Appellant moved for a directed verdict on the ABIK charge. Appellant asserted that the State had failed to prove he intended to kill Armstrong, and the doctrine of transferred intent did not apply. The judge denied the motion.

## ISSUE

Did the trial judge err in refusing to direct a verdict on the ABIK charge because the doctrine of transferred intent is inapplicable when the intended victim is killed and a stray bullet injures—but does not kill—an unintended victim?

## STANDARD OF REVIEW

 In considering a motion for a directed verdict, the trial court is concerned with the existence or non-existence of evidence, not with its weight. The case should be submitted to the jury if there is any direct evidence or substantial circumstantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly or logically deduced. *State v. Robinson*, 310 S.C. 535, 426 S.E.2d 317 (1992). In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State. If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the appellate court must find that the case was properly submitted to the jury. *State v. Venters*, 300 S.C. 260, 387 S.E.2d 270 (1990).

## DISCUSSION

Appellant contends the trial judge erred in refusing to direct a verdict in his favor on the ABIK charge. The doctrine of transferred intent does not apply because any intent was "fully satisfied" by the death of Thrailkill (the intended victim); therefore, nothing was left to transfer to

Armstrong (the unintended victim). Furthermore, appellant argues, the doctrine is inapplicable because the harm appellant intended to inflict on Thrailkill (death) was not identical to the harm inflicted on Armstrong (injury). We disagree.

Criminal liability normally is based upon the concurrence of two factors: the defendant's criminal intent and the actual, physical act constituting the offense. *United States v. Bailey*, 444 U.S. 394, 402, 100 S.Ct. 624, 630–31, 62 L.Ed.2d 575 (1980) (cited in McAninch & Fairey, *The Criminal Law of South Carolina* 1 (1996)). A defendant may not be convicted of a criminal offense unless the State proves beyond a reasonable doubt that he acted with the criminal intent, or mental state, required for a particular offense. *State v. Ferguson*, 302 S.C. 269, 271, 395 S.E.2d 182, 183 (1990) (required mental state for particular crime may be purpose (intent), knowledge, recklessness, or criminal negligence).

Appellant's first argument is easily resolved. Some have observed, as the prosecutor did at appellant's trial, that "malice follows the bullet." Such explanations, as well as the term "transferred intent" itself, are somewhat misleading. The defendant's mental state, or *mens rea*, whatever it may be at the time he allegedly commits a criminal act, is contained within the defendant's brain when he commits the act. That mental state never leaves the defendant's brain; it is not "transferred" from the defendant's brain to another person or place. A more apt description might be that the mental state is like a spotlight emanating from its source—the defendant's mind—to its target—the intended victim.

Nor is that mental state in limited supply. The mental state "spotlight" is not extinguished at the moment a bullet strikes and kills the intended victim, such that there is no mental state left upon which to convict an unintended victim who also is injured or killed. *See People v. Scott*, 14 Cal.4th 544, 59 Cal.Rptr.2d 178, 927 P.2d 288, 292 (1996) ("[c]ontrary to what its name implies, the transferred intent doctrine does not refer to any actual intent that is capable of being 'used up' once it is employed to convict a defendant of a specific intent crime against the intended victim"); *State v. Hinton*, 227 Conn. 301, 630 A.2d 593, 597–98 (1993) (rejecting argument that intent to kill may not be transferred to unintended victim

when intended victim is killed); *Harvey v. State*, 111 Md.App. 401, 681 A.2d 628, 637 (1996) (explaining that the *mens rea* is an elastic thing of unlimited supply which neither follows nor fails to follow the bullet, but never leaves the defendant's brain).

■ The more difficult question is the one presented by the facts of this case and appellant's second argument. Is it appropriate to use the doctrine of transferred intent—admittedly a legal fiction—to transfer appellant's alleged mental state with regard to Thrailkill, the intended victim who was killed, to Armstrong, the unintended victim who was injured but not killed? To pursue our analogy, the jury ordinarily may not unilaterally shift the defendant's mental state "spotlight" from one person to another. The jury simply must determine whether that spotlight existed, i.e., was it "on" or "off." The question in this case is whether it is appropriate to allow the jury to place its collective hand upon the "spotlight" of appellant's mental state and adjust the imaginary beam so that it encompasses not only Thrailkill, but also Armstrong in order to convict appellant of ABIK. Answering that question requires consideration of transferred intent cases decided by this Court and the role of the doctrine in our criminal law.

This Court in several cases has held that a defendant may be found guilty of murder or manslaughter in a case of bad or mistaken aim under the doctrine of transferred intent. In the classic case, the defendant intends to kill or seriously injure one person, but misses that person and mistakenly kills another. Although the defendant did not act with malice toward the unintended victim, the defendant's criminal intent to kill the intended victim (i.e., his mental state of malice) is transferred to the unintended victim. "If there was malice in [defendant's] heart, he was guilty of the crime charged, it matters not whether he killed his intended victim or a third person through mistake." *State v. Heyward,* 197 S.C. 371, 377, 15 S.E.2d 669, 672 (1941) (affirming murder conviction where defendant testified he mistakenly shot and killed police officer who allegedly broke open his front door, believing the officer to be an assassin sent by an angry former employer). *See also State v. Gandy,* 283 S.C. 571, 324 S.E.2d 65 (1984) (affirming murder conviction where defendant intending to kill one man shot through a closed door, killing unintended victim

instead), *overruled on other grounds by State v. Lowry*, 315 S.C. 396, 434 S.E.2d 272 (1993); *State v. Horne*, 282 S.C. 444, 447, 319 S.E.2d 703, 704 (1984) (holding that State in future may prosecute defendant for murder of viable fetus when defendant attacks a pregnant woman with malice and in the process kills the fetus, an unintended victim); *State v. Williams*, 189 S.C. 19, 24, 199 S.E. 906, 908 (1938) (affirming murder conviction where defendant shot at intended victim who was driving a wagon of cotton, but missed him and mistakenly killed the man sitting beside him); LaFave & Scott, *Substantive Criminal Law*, § 3.12(d) (1986) (discussing transferred intent); McAninch & Fairey, at 17–19 (same).

The unintended victim in the cases cited above was killed by the defendant. The Court has not decided a case such as the present one in which the intended victim was killed and the unintended victim was injured, but not killed.

Some courts decline to resort to the doctrine of transferred intent when they are convinced this legal fiction is not needed to hold the defendant criminally liable for his acts. *See State v. Brady*, 745 So.2d 954 (Fla.1999) (declining to apply transferred intent doctrine where bullet fired by defendant missed intended victim and injured unintended victim; jury properly convicted defendant on two counts of attempted second-degree murder, which does not require proof of specific intent to kill); *People v. Birreuta*, 162 Cal.App.3d 454, 208 Cal.Rptr. 635 (1984) (declining to apply transferred intent doctrine when defendant intentionally kills one victim and accidentally kills another victim; in such cases defendant may be prosecuted for first and second degree murder, respectively), *overruled on other grounds by People v. Flood*, 18 Cal.4th 470, 76 Cal. Rptr.2d 180, 957 P.2d 869 (1998); *Harvey v. State*, 681 A.2d at 644 (holding that transferred intent is applicable only when the unintended victim is killed, not when the unintended victim is injured).

The *Harvey* court found

no unsolvable problems [under Maryland law] in punishing the unintended battery of a chance or unintended victim. The common law penalty for common law battery is, after all, unlimited and the defendant may receive any appropriate sentence without the necessity of transferring some

subtle *mens rea* from the intended target to the unintended target.... When the injury inflicted on the unintended victim, moreover, is at the non-fatal level of a battery, one does not need a transferred intent doctrine to establish basic criminal responsibility.

*Harvey,* 681 A.2d at 642. Similarly, the *Birreuta* court, in a case in which both the intended and unintended victims were killed, found the transferred intent doctrine unnecessary because the defendant could be prosecuted for different degrees of murder under California law.

■ We conclude that our criminal laws, unlike those of some other jurisdictions, make it necessary to impose the doctrine of transferred intent in this case. South Carolina recognizes three levels of assault: the offense of simple assault and battery,[1] the offense of assault and battery of a high and aggravated nature (ABHAN), and the offense of ABIK.

■ ABHAN is a common law misdemeanor punishable by up to ten years in prison. *State v. Hill,* 254 S.C. 321, 331, 175 S.E.2d 227, 232 (1970); *State v. Prince,* 240 S.C. 96, 100, 124 S.E.2d 778, 780 (1962). ABHAN is the unlawful act of violent injury to another accompanied by circumstances of aggravation. *State v. Frazier,* 302 S.C. 500, 397 S.E.2d 93 (1990); *State v. Foxworth,* 269 S.C. 496, 238 S.E.2d 172 (1977). Circumstances of aggravation include the use of a deadly weapon, the intent to commit a felony, infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, a difference in gender, the purposeful infliction of shame and disgrace, taking indecent liberties or familiarities with a female, and resistance to lawful authority. *Foxworth,* 269 S.C. at 498, 238 S.E.2d at 173; *State v. Hollman,* 245 S.C. 362, 140 S.E.2d 597 (1965); *State v. Tyndall,* 336 S.C. 8, 21, 518 S.E.2d 278, 285 (Ct.App.1999).

■ We have not explicitly identified any particular mental state the State must prove in order for a defendant to be found guilty of ABHAN. The State does not, however, have to prove the defendant acted with malice to obtain an ABHAN

---

1. S.C.Code Ann. § 22–3–540 to –560 (1989 & Supp.1999) (simple assault and battery is a misdemeanor within jurisdiction of magistrate's court, with a maximum penalty of $500 or thirty days imprisonment).

conviction because the circumstances that give rise to ABHAN may also give rise to an inference of malice. Thus, a defendant may be convicted of ABHAN regardless of whether malice is present. *State v. Pilgrim,* 320 S.C. 409, 465 S.E.2d 108 (Ct.App.1995) (discouraging practice of comparing ABHAN to manslaughter injury charge because, when malice is the key issue, it is confusing to jurors and prejudicial to defendant to import the heat of passion and sufficient legal provocation elements of voluntary manslaughter into ABHAN charge), *aff'd as modified in State v. Pilgrim,* 326 S.C. 24, 482 S.E.2d 562 (1997), *overruled on other grounds by State v. Foust,* 325 S.C. 12, 479 S.E.2d 50 (1996).

 In contrast, ABIK is a felony punishable by up to twenty years in prison. S.C.Code Ann. § 16–3–620 (1985). The required mental state for ABIK, like murder, is malice aforethought. *State v. Foust, supra* (holding that State must show a general intent that defendant acted with malice to obtain ABIK conviction, and overruling cases indicating that defendant had to possess specific intent to kill to be guilty of ABIK); *State v. Hinson,* 253 S.C. 607, 611, 172 S.E.2d 548, 550 (1970) (defining assault and battery with intent to kill as "an unlawful act of violent nature to the person of another with malice aforethought, either express or implied"); S.C.Code Ann. § 16–3–10 (1985) (defining murder as "the killing of any person with malice aforethought, either express or implied").[2]

The record shows appellant did not act with malice toward Armstrong, the unintended victim. Appellant was angry at Thrailkill, the intended victim, and he killed him. A stray bullet happened to strike Armstrong. Consequently, the only way the State could show that appellant allegedly acted with malice with regard to Armstrong, thereby possibly obtaining

---

2. "Malice is defined as being hatred or ill-will. Malice is wrongful intent to injure another person. It indicates a wicked or depraved spirit intent on doing wrong. Malice is a legal term implying wickedness and excluding a just cause or excuse. The term malice indicates a formed purpose and design to do a wrongful act under the circumstances that exclude any legal right to do it." *State v. Fuller,* 229 S.C. 439, 93 S.E.2d 463, 466 (1956); *Heyward,* 197 S.C. at 375, 15 S.E.2d at 671.

an ABIK conviction and subjecting him to a twenty-year sentence, is through the doctrine of transferred intent.

Appellant conceivably could be held liable for ABHAN, regardless of whether he acted with malice. The maximum penalty for ABHAN, however, is ten years. *State v. Hill,* *supra* (interpreting predecessor statute of S.C.Code Ann. § 17–25–20 (1985) to mean maximum punishment is ten years when statute does not establish the penalty). We conclude it would not be appropriate to limit the penalty and punishment to that provided for ABHAN under these circumstances. A person who, acting with malice, unleashes a deadly force in an attempt to kill or injure an intended victim should anticipate that the law will require him to answer fully for his deeds when that force kills or injures an unintended victim. Accordingly, we hold that the doctrine of transferred intent may be used to convict a defendant of ABIK when the defendant kills the intended victim and also injures an unintended victim.

Our holding is consistent with the approach taken by other jurisdictions. "When a defendant contemplates or designs the death of another, the purpose of deterrence is better served by holding that defendant responsible for the knowing or purposeful murder of the unintended as well as the intended victim." *State v. Worlock,* 117 N.J. 596, 569 A.2d 1314, 1325 (1990) (affirming murder convictions where defendant shot and killed both intended and unintended victims); *see also* *Hinton,* 630 A.2d at 596–99 (rejecting *Birreuta, supra,* and upholding use of transferred intent where defendant fired into a group, killing three men and seriously injuring a fourth); *Ochoa v. State,* 981 P.2d 1201, 1205 (Nev.1999) (rejecting *Birreuta, supra,* and applying transferred intent to all crimes where an unintended victim is harmed as a result of defendant's specific intent to harm an intended victim regardless of whether the intended victim is injured; thus, it was appropriate to charge defendant who killed the intended victim and injured a bystander with a stray bullet with murder and attempted murder).

We take this opportunity to clarify our decision in *State v. Bryant,* 316 S.C. 216, 218, 447 S.E.2d 852, 854 (1994). In that case, the defendant slammed a police officer against his patrol car during a struggle while resisting arrest, damaging the car.

The defendant was convicted of malicious damage to personal property. We affirmed the Court of Appeals' ruling that it was improper to submit the offense of malicious damage to personal property to the jury because

> [t]he only reasonable inference from the evidence is that the damage to the patrol car was an unintended harm. The doctrine of transferred intent applies only in the situation of the same intended harm inflicted on an unintended victim.... The intent to assault and batter the police officer cannot be transferred to the property damage since the harm caused was different from the type of harm intended.

*Id.* at 219, 447 S.E.2d at 854.

*Bryant* may be read to say the doctrine of transferred intent is inapplicable when the harm caused (injury to property) is different from the type of harm intended (injury to a person). Thus, the case at hand is distinguishable from *Bryant* because appellant intended to harm one person and in the process harmed another person. On the other hand, *Bryant* could be read to say that intent is not transferable when the harm caused (injuring a person) is different from the type of harm intended (killing a person). Under that interpretation, appellant's intent would not be transferable.

We find the former interpretation more appropriate than the latter, and so we distinguish appellant's case from *Bryant.* A coincidental damaging of property while intending to harm a person simply presents a different situation than harming one person while intending to harm another person.[3]

## CONCLUSION

We hold that the doctrine of transferred intent may be used to convict a defendant of ABIK when the defendant kills the intended victim and also injures an unintended victim. We

---

3. We do not mean to imply that we would distinguish *Bryant* in a similar manner if the defendant injured a person while intending to damage property. Given our reasoning in this case, the doctrine of transferred intent might apply in a case in which the defendant, for example, unintentionally harmed a person when he intentionally fired a weapon at a supposedly vacant house.

278

affirm appellant's ABIK conviction and the twenty-year sentence.

AFFIRMED.

TOAL, C.J., MOORE and BURNETT, JJ., and Acting Justice EDWARD B. COTTINGHAM, concur.