# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner-Respondent,

v.

Robert Xavier Geter, Respondent-Petitioner.

Appellate Case No. 2021-001408

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
DeAndrea G. Benjamin, Circuit Court Judge

---

Opinion No. 28256
Heard September 13, 2023 – Filed January 23, 2025

---

## AFFIRMED

---

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Respondent-Petitioner.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, Assistant Attorney General Tommy Evans, Jr., and Solicitor Byron E. Gipson, all of Columbia, for Petitioner-Respondent.

---

**JUSTICE FEW:** This Court has been asked several times to decide whether the doctrine of transferred intent applies to the crime of attempted murder. Each time

we declined to answer the question. Today we hold the doctrine of transferred intent does not apply to attempted murder. We affirm the court of appeals' decision to reverse Robert Geter's conviction for attempted murder. We affirm—as the court of appeals did—Geter's murder conviction.

## I.        Facts and Procedural History

In the early morning hours of March 7, 2015, Robert Xavier Geter and James Lewis began arguing and then fighting on the dance floor at Culler's Bar on Monticello Road north of the City of Columbia. Who started the fight and who remained the aggressor as the fight moved to a deck outside the bar was hotly disputed at trial. The State's version of events began with the owner of the bar—Deborah Culler— who testified "Geter started the fight" and "just kept coming after" Lewis, and Geter "wouldn't leave him alone." Clarence Stone, who was acting as the unofficial bouncer at the bar, testified he saw the commotion on the dance floor, grabbed Lewis—whom Stone testified was on top of Geter by that time—and dragged him outside onto the back deck. While Stone and Lewis were outside, Culler told Geter he had to leave the bar. Instead of leaving through the front door, Geter left toward the back deck, following Stone and Lewis. Another State's witness heard Geter say on his way out, "I'm going to kill me somebody tonight."

Stone testified Geter came out onto the back deck and approached Lewis appearing to offer a handshake and asking, "Are we good? We good?" Geter then started stabbing Lewis. Stone tried to intervene, and in the process Geter stabbed Stone in one eye causing permanent blindness.

Geter testified he was never the aggressor and he acted in self-defense. He claimed Lewis, Stone, and another person ganged up on him while he was still on the dance floor, he was the first one out the back door, and the others followed him and continued their attack on the deck. Geter testified he "sliced" Lewis with a knife he kept in his pocket as Lewis and Stone were "steady" beating him.

Ultimately, Geter stabbed Lewis twice in the chest and slashed him across his arms and face. Stone survived, but Lewis died as a result of his wounds. The State indicted Geter for murder and attempted murder. In the attempted murder indictment, the State alleged Geter "did with the intent to kill, attempt to kill CLARENCE STONE." At trial, however, the State's theory was that Geter was attempting to kill Lewis when he stabbed Stone. The State argued Geter was guilty of attempted murder based on the doctrine of transferred intent. In his closing argument, the assistant solicitor told the jury, "When [Geter] went outside with the

intent to kill James Lewis, that intent is the same intent that transferred to his attempted murder of Clarence Stone. He is guilty of attempted murder." The trial court instructed the jury on transferred intent, to which Geter objected, and the jury convicted Geter of murder and attempted murder.

Geter appealed on two grounds. He argued transferred intent can never apply to attempted murder and that certain testimony by Investigator Joseph Clarke of the Richland County Sheriff's Department constituted improper vouching and bolstering. A majority of the court of appeals found the trial court erred in charging transferred intent to the jury. *State v. Geter*, 434 S.C. 557, 567-68, 864 S.E.2d 569, 574 (Ct. App. 2021). It held "the State must demonstrate Geter attempted to kill Stone, and that was not the State's theory of the case." 434 S.C. at 568, 864 S.E.2d at 574-75. On that basis, the court of appeals reversed Geter's conviction for attempted murder. 434 S.C. at 568, 864 S.E.2d at 575. Judge Geathers dissented on this point. 434 S.C. at 571-72, 864 S.E.2d at 576. The court of appeals unanimously found part of Clarke's testimony constituted improper bolstering but the error in admitting the testimony was harmless. 434 S.C. at 569-70, 864 S.E.2d at 575-76. The court of appeals affirmed Geter's conviction for murder. 434 S.C. at 571, 864 S.E.2d at 576. This Court granted cross-petitions for a writ of certiorari to review both rulings.

## II.     Transferred Intent

South Carolina did not have the crime of attempted murder until 2010 when our General Assembly enacted section 16-3-29 of the South Carolina Code (2015) as part of the Omnibus Crime Reduction and Sentencing Reform Act of 2010. Act No. 273, 2010 S.C. Acts 1937, 1947. Confusion immediately arose as to whether attempted murder required proof of a specific intent to kill or whether general intent—as will suffice for murder—is all the statute requires. *See State v. King*, 422 S.C. 47, 71, 810 S.E.2d 18, 31 (2017) (Kittredge, J., concurring in result) ("The question is easily stated—whether the section 16-3-29 offense of attempted murder is a specific intent crime—but not easily answered."). In 2015 and 2017, the court of appeals and a majority of this Court resolved the confusion and held the statute requires the State prove a specific intent to kill. *See King*, 422 S.C. at 55, 810 S.E.2d at 22 ("We agree with the Court of Appeals that 'the Legislature intended to require the State to prove specific intent to commit murder as an element of attempted murder, and therefore the trial court erred by charging the jury that attempted murder is a general intent crime.'" (quoting *State v. King*, 412 S.C. 403, 411, 772 S.E.2d 189, 193 (Ct. App. 2015))).

This holding, in turn, created confusion over how the State may prove specific intent to kill when the defendant attempts to kill one person and fails but injures another person, and whether in that circumstance the State need resort to the doctrine of transferred intent. *See State v. Devonta Edward Williams*, 437 S.C. 100, 103, 103-06, 876 S.E.2d 324, 326, 326-28 (Ct. App. 2022) (stating the crime of attempted murder "often seems to present confusing issues" and discussing whether transferred intent applies); *State v. James Caleb Williams*, 435 S.C. 288, 299, 867 S.E.2d 430, 436 (Ct. App. 2021) ("We find the doctrine of transferred intent inapplicable to this charge of attempted murder."), *rev'd on other grounds*, 439 S.C. 620, 889 S.E.2d 562 (2023); *State v. Michael Juan Smith*, 425 S.C. 20, 34, 819 S.E.2d 187, 194 (Ct. App. 2018) (holding "the State properly relied on the transferred intent doctrine to show specific intent" for attempted murder), *rev'd on other grounds*, 430 S.C. 226, 845 S.E.2d 495 (2020); *Devonta Edward Williams*, 437 S.C. at 104, 876 S.E.2d at 326 ("Two of this court's decisions stand for the proposition that transferred intent does not apply to attempted murder." (first citing *James Caleb Williams*, 435 S.C. at 299, 867 S.E.2d at 436; and then citing *Geter*, 434 S.C. at 568, 864 S.E.2d at 575)); *Geter*, 434 S.C. at 571-72, 864 S.E.2d at 576 (Geathers, J., dissenting) ("stand[ing] by" the position that transferred intent applies to attempted murder (citing *Smith*, 425 S.C. at 32-34, 819 S.E.2d at 193-94)).

In *Michael Juan Smith*, for example, the defendant was convicted of attempted murder and other crimes in the tragic shooting of a young woman "in the Five Points area of Columbia." 430 S.C. at 228, 845 S.E.2d at 496. "It was undisputed Smith did not intend to harm her. Rather, Smith claimed he was . . . shooting at a [rival] group of men who had threatened him. Smith missed his intended target and hit the victim by accident." *Id.* The State attempted to convict Smith of attempted murder on three different theories of specific intent: "felony attempted-murder,"[1] implied malice, and transferred intent. 430 S.C. at 229, 234 n.9, 845 S.E.2d at 496, 499 n.9. This Court reversed the attempted murder conviction in *Smith* without addressing the doctrine of transferred intent. *See* 430 S.C. at 234 n.9, 845 S.E.2d at 499 n.9. We stated, however, that if the State on remand—as it indicated it would—presented the theory that the defendant was guilty of "attempted murder for shooting at the rival group," then "there would be no question on remand as to the applicability of the doctrine of transferred intent." *Id.* Thus, we indicated, transferred intent would

---

[1] The so-called "felony murder" rule is confusing enough. *See* William Shepard McAninch et al., *The Criminal Law of South Carolina* 103-10 (5th ed. 2007) (discussing the "confusing aspects of the felony murder rule"). In *Smith*, we held "felony attempted-murder is not a recognized crime." 430 S.C. at 232, 845 S.E.2d at 498.

not apply and Smith could be guilty of attempted murder if the State proved he specifically intended to kill one or more of the rival gang members but unintentionally hit and injured the young woman. *Id.*; *see also State v. Gerald Rudell Williams*, 427 S.C. 148, 157 n.9, 829 S.E.2d 702, 707 n.9 (2019) (finding "the doctrine of transferred intent [is] unnecessary to sustain the convictions for the attempted murders").

Today we resolve any remaining confusion on this issue by holding the doctrine of transferred intent is inapplicable to the crime of attempted murder. *See* 40 C.J.S. *Homicide* § 42 (2014) ("The doctrine of transferred intent . . . does not apply to inchoate homicides, e.g., attempted murder . . . ."). Attempted murder requires the State to prove three essential elements: (1) malice, (2) the specific intent to kill a person, and (3) an attempt to kill that person. § 16-3-29; *King*, 422 S.C. at 64, 810 S.E.2d at 27. Because those are the only three elements, the crime is complete upon the defendant committing the act that constitutes the attempt, and the State need not concern itself regarding the result of the attempt. Because the State is not required to prove the result of the defendant's attempt in order to satisfy the elements of the crime, transferred intent is inapplicable.

To be clear about "transferred intent," however, it is a perfectly valid legal theory that applies to murder and other crimes where the State is required to prove the result of the defendant's actions. *See, e.g.*, *State v. Fennell*, 340 S.C. 266, 272, 531 S.E.2d 512, 515 (2000) ("If there was malice in [defendant's] heart, he was guilty of [murder], it matters not whether he killed his intended victim or a third person through mistake." (quoting *State v. Heyward*, 197 S.C. 371, 377, 15 S.E.2d 669, 672 (1941)) (first alteration in original)); *see also State v. Williams*, 189 S.C. 19, 22-23, 199 S.E. 906, 907 (1938) (affirming murder conviction where defendant aimed at a wagon driver but hit and killed a passenger instead); *Fennell*, 340 S.C. at 274, 276, 531 S.E.2d at 516, 517 (holding transferred intent applied to assault and battery with intent to kill because the doctrine was "necessary" in order to hold someone fully responsible despite injuring an unintended victim). For example, to obtain a conviction for the former crime of assault and battery with intent to kill, the State must have proven the defendant committed a battery against the person toward whom he had malice and whom he assaulted.[2] If the defendant has "bad or mistaken

---

[2] Correctly defined in this context, "An 'assault' is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another. A 'battery' is the successful accomplishment of such attempt." *State v. Jones*, 133 S.C. 167, 179, 130 S.E. 747, 751 (1925), *overruled on other grounds by State v. Foust*, 325 S.C. 12, 479 S.E.2d 50 (1996). In other words, "assault" is the attempt, and "battery"

aim," as we said in *Fennell*,[3] or for some other reason batters the wrong victim, the State can be left with a gap in proof that—despite the defendant's clear guilt—leaves it impossible to achieve a conviction. In those instances, the law steps in with the "legal fiction" of transferred intent to close the gap in proof so the State can convict a guilty defendant despite the unintended result. *See Fennell*, 340 S.C. at 270-77, 531 S.E.2d at 514-18 (providing a detailed discussion of the "legal fiction" of transferred intent). This is the reason we have explained that the doctrine "makes a whole crime out of two halves by joining the intent to harm one victim with the actual harm caused to another." *Gerald Rudell Williams*, 427 S.C. at 150, 829 S.E.2d at 702-03.

In attempted murder cases, however, there is no gap to close. Section 16-3-29 sets forth the three essential elements the State must prove to achieve a conviction for the crime. Malice—the first of the three elements—has been discussed and explained at length in murder and other cases for the entire history of our State. *See generally State v. Campbell*, 443 S.C. 182, 190, 904 S.E.2d 441, 445 (2024) (calling the definition of malice "settled law"). There is nothing in section 16-3-29 that changes this "settled" analysis of malice just because the State is required to prove it in an attempted murder case. *See Campbell*, 443 S.C. at 189-90, 904 S.E.2d at 444-45 (equating "malice" in murder and attempted murder cases). The second and third elements, however, are new to our State with the enactment of section 16-3-29. In *King*, we explained it is the "with intent to kill" language in section 16-3-29 that must apply to a specific person, holding "the new offense of attempted murder . . . includes a 'specific intent to kill' as an element." 422 S.C. at 63-64, 810 S.E.2d at 26-27. Similarly, the attempt to kill must be directed toward a person the defendant specifically intended to kill.

_____

is the "violent injury" that results. With the 2010 Act, however, the General Assembly repealed the common law offense of assault and battery with intent to kill. *King*, 422 S.C. at 63-4, 810 S.E.2d at 26-27 ("We find the General Assembly expressly repealed the offense of ABWIK and purposefully created the new offense of attempted murder . . . .").

[3] *See* 340 S.C. at 272, 531 S.E.2d at 515 ("[A] defendant may be found guilty of murder or manslaughter in a case of bad or mistaken aim under the doctrine of transferred intent."); 21 Am. Jur. 2d *Criminal Law* § 115 (2016) ("The purpose of the transferred intent theory is to ensure that a person will be prosecuted for the crime that person intended to commit even when, because of bad aim or some other lucky mistake, the intended target was not the actual victim.").

Thus, the second and third elements require the State to prove (2) the specific intent to kill a human being and (3) action taken for the purpose of carrying out that intent. But these elements do not require proof of anything—intent or otherwise—that occurs after the bullet leaves the gun, or in this case, after Geter initiated the swing of the knife.[4] Most importantly, however, neither of these elements involves the

---

[4] Our point that the second and third elements must apply to the intended victim is illustrated by the Supreme Court of California's decision in *People v. Perez*, 234 P.3d 557 (Cal. 2010). In that case, the defendant "fired a single bullet at a distance of 60 feet, from a car going 10 to 15 miles per hour, at a group of seven peace officers and a civilian who were standing less than 15 feet apart from one another in a dimly lit parking lot." 234 P.3d at 559. However, there was "no evidence he was targeting any particular individual when he fired at the group." *Id.* The bullet struck one person but did not kill him. *Id.* A jury convicted the defendant of eight counts of attempted murder based on the one gunshot. *Id.* Reversing seven of the eight convictions, the Court explained,

> The mental state required for attempted murder has long differed from that required for murder itself. Murder does not require the intent to kill. Implied malice—a conscious disregard for life—suffices. In contrast, attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.
>
> Thus, in order for defendant to be convicted of the *attempted* murder of each of the seven officers and the civilian in the group into which he fired the single shot, the prosecution had to prove he acted with the specific intent to kill each victim. Guilt of attempted murder must be judged separately as to each alleged victim. This is true whether the alleged victim was particularly targeted or randomly chosen.
>
> In [a prior decision], we considered the question whether a shooter who fires a single shot into a group of people, intending to kill one of the group, but not knowing or caring which one, can be convicted of a single count of attempted murder. We answered the inquiry affirmatively,

result of the defendant's attempt. In particular, whether the intended victim—or some other person or no person at all—is injured is simply not relevant to the elements the State must prove to achieve a conviction for attempted murder. In fact, a defendant with malice and the specific intent to kill is guilty of attempted murder *because* of his bad or mistaken aim, not despite it. It is unnecessary, therefore, to employ the fiction of transferring the defendant's intent to kill one person to the person he actually hit on his attempt.

To illustrate the point, we consider several hypothetical scenarios from which an attempted murder charge may arise:

> 1. A has malice and the specific intent to kill B. Acting on that intent, A attempts to shoot B but the gun jams and does not fire.

In this scenario, in which no result ensues from the attempt because the bullet never left the chamber of the jammed gun, A is nevertheless guilty of attempted murder.

---

> explaining that the mental state required for attempted murder is the intent to kill *a* human being, not a *particular* human being.
>
> With regard to whether the evidence in this case is sufficient to establish that defendant acted with specific intent to kill *someone* in the group he shot at, past decisions have recognized that the act of firing toward a victim at a close, but not point blank, range in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill. Consistent with these principles, a rational trier of fact could find that defendant's act of firing a single bullet at a group of eight persons from a distance of 60 feet established that he acted with intent to kill *someone* in the group he fired upon. A person who intends to kill can be guilty of attempted murder even if the person has no specific target in mind.

234 P.3d at 562-63 (citations and quotation marks omitted) (cleaned up).

This Court affirmed a conviction for attempted murder on precisely these facts in *State v. Young*, 429 S.C. 155, 838 S.E.2d 516 (2020). We stated,

> Young Jr. also appeals his conviction for the attempted murder of Robinson. At one point in the combat, Young Jr. had his gun pointed at Robinson. When Young Jr. pulled the trigger, the gun jammed and did not fire. This action resulted in a charge of attempted murder. We affirm the conviction for attempted murder pursuant to Rule 220(b), SCACR, as any argument that Young Jr. did not attempt to kill Robinson is manifestly without merit.

429 S.C. at 158 n.2, 838 S.E.2d at 517 n.2.

The following scenarios do involve a result of the defendant's attempt, but not the result the defendant intended. Nevertheless, these scenarios are just as clearly attempted murder:

> 2. A has malice and the specific intent to kill B. Acting on that intent, A shoots at and hits B but only wounds and does not kill him.

> 3. A has malice and the specific intent to kill B. Acting on that intent, A shoots at B but misses him, and the bullet hits a house.

In both of these scenarios, A acted with the specific intent to kill B, but a different result ensued. However, the different result is irrelevant to an analysis of whether the elements of attempted murder are met because the crime is complete upon commission of the act constituting the attempt; the result does not matter. The third scenario is almost the same as *Gerald Rudell Williams*, in which we affirmed convictions for attempted murder when the defendant shot at a figure standing in a doorway of a mobile home—thinking the figure was a different person—but missed and hit the side of the house. Chief Justice Kittredge—writing for the Court—explained:

> [W]e find the doctrine of transferred intent unnecessary to sustain the convictions for the attempted murders of Young and Wrighton. Petitioner was alleged to have specifically intended to kill Young the night of the

shooting, and to have shot at the door where Wrighton stood, intending to kill the figure in the doorway. It matters not that Petitioner may have been unaware it was Wrighton in the door, rather than Young. Simply put, Petitioner *intended* to shoot the person (Wrighton) who appeared in the doorway. As a result, we alternatively sustain Petitioner's convictions for the attempted murders of Young and Wrighton without resort to the doctrine of transferred intent.

*Gerald Rudell Williams*, 427 S.C. at 157-58 n.9, 829 S.E.2d at 707 n.9.

The fourth scenario is legally the same as the third:

4. A has malice and the specific intent to kill B. Acting on that intent, A shoots at B but misses him, and the bullet hits but does not kill a third person, C.

In this scenario, instead of hitting a house when the defendant missed his intended target, the defendant hit another person. This is actually the *Michael Juan Smith* scenario, in which the State indicated it intended to retry Smith on the theory he specifically intended to kill the rival gang members but missed and unintentionally hit the young woman. In our fourth hypothetical scenario or in the actual *Michael Juan Smith* scenario, if the State proves the facts necessary to support the theory, the jury may find the defendant guilty of attempted murder without regard for the result of the attempt and with no consideration of transferred intent. This is also the scenario the court of appeals recently addressed hypothetically in *Devonta Edwards Williams*. The court wrote,

Suppose Peter fires a single shot at Paul in an attempt to kill him. The bullet misses Paul and hits and injures Mary instead. As far as attempted murder is concerned, Peter attempted to murder Paul, not Mary. After all, there is no evidence Peter intended to kill Mary. His intent was to kill Paul.

437 S.C. at 104, 876 S.E.2d at 326.

In this hypothetical, the State's proof that Peter specifically intended to kill Paul and acted on that intent by firing the shot at him makes Peter guilty of attempted murder

despite the fact he unintentionally injured Mary instead of his intended victim Paul.[5] The hypothetical illustrates how, in contrast to murder, the transferred intent doctrine is not necessary to hold an accused criminally liable for his bad aim in an attempted murder case.

This brings us to the case now before the Court. Apart from Geter's use of a knife instead of a gun, this case is no different from our fourth hypothetical, the *Michael Juan Smith* scenario, and the *Devonta Edwards Williams* hypothetical. If the State had tried Geter for attempted murder without confusing the issue by improperly injecting the theory of transferred intent, proved Geter had malice and the specific intent to kill Lewis, and showed that—in an act separate from the act of murdering Lewis—Geter attempted to stab Lewis but instead stabbed Stone, then the jury could have found Geter guilty of attempted murder. With the requisite specific intent to kill, once the defendant commits an act that constitutes an attempt to carry out that intent, the crime is complete, and it does not matter what result—if any—ensues.

The court of appeals held, "To support that [attempted murder] charge, the State must demonstrate Geter attempted to kill Stone . . . ." *Geter*, 434 S.C. at 568, 864 S.E.2d at 574. As we have explained, this comment viewed in the abstract is incorrect because—as discussed with our fourth hypothetical and the *Michael Juan Smith* scenario—if A (Geter or Smith) has the specific intent to kill B (Lewis or the rival gang members), and acting on that intent attempts to kill B, but hits C (Stone

---

[5] The issue on appeal in *Devonta Edwards Williams* was whether the trial court erred in denying Williams' directed verdict motion on one of three charges Williams faced. 437 S.C. at 103, 876 S.E.2d at 326. The facts of that charge were that Williams shot into a crowd of people with no apparent idea Knox was present. 437 S.C. at 102, 876 S.E.2d at 325. The State argued "Williams' intent to injure other people" sufficed, *id.*, and the trial court denied the directed verdict motion, 437 S.C. at 103, 876 S.E.2d at 326. The court of appeals affirmed—correctly—relying on what it called "this 'zone of danger' theory." 437 S.C. at 105-06, 876 S.E.2d at 327-28. We do not disagree with the court of appeals, but the "zone of danger" theory was not necessary in that case. *See infra* note 7. Rather, applying the only three elements of attempted murder as set forth in section 16-3-29, Williams was guilty of attempted murder because the State proved malice and his specific intent to kill a person in the group. It did not matter what result ensued from his attempt to carry out that intent. Thus, the court of appeals correctly affirmed Williams' conviction for attempted murder "[d]espite the trial court's erroneous reliance on the doctrine of transferred intent." 437 S.C. at 106-07, 876 S.E.2d at 328.

or the young woman), he can be guilty of attempted murder. On the particular facts of this case, however, the court of appeals is correct. Here, the State proved Geter pulled out his knife, swung it repeatedly at Lewis within a span of only a few seconds, and killed him. On these facts, the jury found Geter guilty of murder. In what was arguably the same act—a series of swings of a knife at Lewis—Geter inadvertently stabbed Stone. Viewed in isolation, this act constitutes attempted murder. However, in combination with his successful killing of Lewis, the State cannot convict Geter of both murder and attempted murder for the same act. Thus, in this unique case, the court of appeals correctly determined the attempted murder conviction could stand only if Geter "attempted to kill Stone." The incorrect transferred intent jury instruction permitted the jury to find Geter guilty of both murder and attempted murder on what might have been the same act.[6,7]

---

[6] The court of appeals was correct for the additional reason that the State could not convict Geter on the theory he attempted to murder Lewis unless it made a motion to amend the indictment in which it had alleged he attempted to murder Stone. However, footnote 4 of the court of appeals' opinion could indicate the court made the statement quoted above that "the State must demonstrate Geter attempted to kill Stone" because it believed it is simply not possible to convict A of attempted murder when he attempts to kill B but injures C. *See* 434 S.C. at 568 n.4, 864 S.E.2d at 574 n.4. As our opinion today makes clear, if that is what the court of appeals meant, it was mistaken.

[7] Had the State chosen to try this case on the theory set forth in the indictment—that Geter also specifically intended to kill Stone—the evidence presented would have given rise to a jury question as to whether Geter could be guilty of murder and attempted murder, with the theory supporting the attempted murder charge being that in addition to the intent necessary to support Geter's murder of Lewis, Geter also had the specific intent to kill Stone. If the State proved such intent, then the act of stabbing Stone would be a separate act from the act of murdering Lewis. This takes us back to the court of appeals' "zone of danger" theory from *Devonta Edwards Williams*. The court of appeals stated,

> It is, after all, only natural to infer that when someone shoots at another person, the shooter intends to kill. By the same reasoning, when someone points and fires a deadly weapon multiple times at a group of people he knows are in the line of fire, we believe a rational juror could infer the shooter intended to murder whoever may have been injured in that group.

Thus, we affirm the court of appeals in reversing the attempted murder conviction.

To be clear on one final point, our statements above (1) "the State need not concern itself regarding the result of the attempt," (2) "the result does not matter," and (3) "it does not matter what result—if any—ensues," should be understood to apply only to what the State must prove to achieve a conviction for attempted murder. Of course the result of the defendant's actions matters to both the intended and unintended victims, and it matters to the State under the Victims' Bill of Rights and the Victims' Rights Act. *See* S.C. CONST. art. I, § 24 (Victims' Bill of Rights); S.C. Code Ann. §§ 16-3-1505 to -1565 (2015 & Supp. 2024) (Victims' Rights Act). In this case, there are two victims of a properly-framed attempted murder charge. *See* S.C. Code Ann. § 16-3-1510(a) (2015) (defining "Victim" as "any individual who suffers direct or threatened physical, psychological, or financial harm as the result of the commission *or attempted commission* of a criminal offense" (emphasis added)). Under subsection 16-3-1510(a), Lewis is a victim of Geter's attempted murder because Geter attempted to kill him, and Stone is a victim too because Geter stabbed him in the eye and blinded him. Similarly, there are multiple victims in our hypothetical scenario 4, the *Michael Juan Smith* scenario, and the *Devonta Edwards Williams* hypothetical. In each such case, the intended victim and the unintended victim who was inadvertently injured are both victims. Thus, the crime of attempted murder is integrally connected to the unintended victim who was injured as a result of the crime.

The point of this entire opinion, however, is not the identity of the victims nor to vindicate the harm caused to them; neither is an issue in this case. Whether the State may charge a defendant in this scenario with other crimes that relate only to the unintended victim is also not an issue in this case. Rather, the only issue we address in this opinion is what the State must allege and prove to get a conviction for attempted murder when the defendant's attempt to kill the intended victim causes harm to an unintended victim. On that point, the State need only allege and prove the three essential elements discussed in this opinion.[8] The result—if any—of the

437 S.C. at 105, 876 S.E.2d at 327.

[8] The proper manner in which to frame an indictment in this scenario seems to be a particular point of confusion. While this Court is not in the business of drafting indictments, this opinion makes clear that one way to frame an indictment in this scenario—using the *Devonta Edwards Williams* hypothetical to illustrate the point—

defendant's criminal acts simply does not matter to the elements of attempted murder, and there is no need for any further mention of transferred intent.

### III.  Vouching or Bolstering

Geter also challenges Investigator Clarke's trial testimony that a statement Stone made to him shortly after the crimes occurred "was consistent with [Stone's] trial testimony." *Geter*, 434 S.C. at 569, 864 S.E.2d at 575.  The court of appeals held "it was inappropriate for Investigator Clarke to opine as to the consistency of Stone's testimony with his prior statement."  434 S.C. at 569-70, 864 S.E.2d at 575-76.  For the reasons explained by the court of appeals, we agree.  We also agree the error was harmless.  434 S.C. at 571, 864 S.E.2d at 576.

### IV.  Conclusion

For the reasons stated above, we affirm the court of appeals' decision to reverse Geter's attempted murder conviction because transferred intent does not apply to attempted murder.  We uphold his murder conviction because the error in admitting Clarke's testimony was harmless.

**AFFIRMED.**

**JAMES, HILL, JJ., and Acting Justice Donald W. Beatty, concur.**
**KITTREDGE, C.J., concurring in result only.**

---

would be something like this: "Peter, acting with malice and the intent to kill Paul, attempted to carry out that intent by firing a single gunshot at Paul."  The State would, of course, add factual allegations to establish timing, venue, and perhaps other matters, but this general framework suffices to allege the three essential elements necessary to achieve a conviction for attempted murder in a scenario such as the *Devonta Edwards Williams* hypothetical.  If the State chooses to include the identity of the unintended victim in the indictment, it certainly may do so, but that fact is not necessary to allege the elements of attempted murder under section 16-3-29.

**CHIEF JUSTICE KITTREDGE:**  I concur in result.  I do so, however, reluctantly and in recognition of the counterintuitive logic—flowing from this Court's interpretation of the attempted murder statute[9]—involved in *State v. King*.[10]  In *King*, we held attempted murder requires proof of a higher degree of intent (specific intent) than that required to prove murder (general intent).  Necessarily, then, prosecuting attempted murder cases is more difficult than prosecuting murder cases.  This difficulty is compounded in cases in which the act underlying the attempt injures an unintended victim instead of the intended victim.  My research from around the country confirms the majority is correct, and transferred intent may not be used to charge a defendant with the attempted murder of the unintended victim.  *See, e.g.*, *Cockrell v. State*, 890 So. 2d 174 (Ala. 2004); *Ramsey v. State*, 56 P.3d 675 (Alaska Ct. App. 2002); *People v. Bland*, 48 P.3d 1107 (Cal. 2002); *Harrison v. State*, 855 A.2d 1220 (Md. 2004).

To the extent the majority opinion can be read to suggest a single attempted murder charge could adequately vindicate the harm to two people—one the intended victim, and the second an injured, unintended victim—I respectfully disagree.  In such a situation, a single count of attempted murder cannot be applied to both victims.  In fact, it appears this is why the State has continually sought to apply transferred intent to the crime of attempted murder since section 16-3-29 was enacted: it was attempting to bring the most serious charges available to vindicate the harm to both victims.

The majority focuses its analysis on the propriety of an attempted murder charge as it relates to the *intended* victim, and I completely agree with the result the majority reaches.  My concern is how the law currently requires the State (and the courts) to treat an injury to an *unintended* victim.  When the intent to kill the intended victim is not fully actualized and, instead, an unintended victim is injured, an attempted murder charge will not lie for the injury to the unintended victim.

My concern is perhaps best understood in the context of a hypothetical.  Take for example a situation where, in the course of attempting to murder an

---

[9] S.C. Code Ann. § 16-3-29 (2015).

[10] 422 S.C. 47, 810 S.E.2d 18 (2017).

intended victim, the defendant's actions severely injure—but do not kill—an unintended victim.  *See, e.g.*, *State v. Smith*, 430 S.C. 226, 845 S.E.2d 495 (2020).  As I believe we hold today, the State cannot prosecute the defendant for the attempted murder of the unintended victim.  Rather, the State can only prosecute the defendant for the attempted murder of the intended victim, whether that intended victim was injured or not.  For the innocent bystander's inadvertent injury—no matter how horrific—the State may only prosecute the defendant for lesser degrees of assault and battery, all of which involve substantially shorter prison sentences.[11]

We are thus left with an unsettling and illogical result.  There will be times when the intended victim is uninjured and the unintended victim is horribly maimed.  The charge for the intended, uninjured victim will be attempted murder, and the charge for the unintended, severely injured victim will be some lesser assault and battery offense.  That is the result required under section 16-3-29.  Any change, if warranted, must come from the General Assembly.[12]

---

[11] The maximum sentence associated with attempted murder is thirty-years' imprisonment.  *See* S.C. Code Ann. § 16-3-29 (2015).  In contrast, the maximum sentence for the most serious lesser-included offense, assault and battery of a high and aggravated nature, is twenty-years' imprisonment.  *See* S.C. Code Ann. § 16-3-600(B)(2) (2015).  The penalties for the lesser-degrees of assault and battery drop off sharply from there, not to mention the differing parole consequences for those less-serious offenses.

[12] *See King*, 422 S.C. at 64 n.5, 810 S.E.2d at 27 n.5 ("While we find it unnecessary to address King's additional sustaining ground [regarding the propriety of charging the jury, in an attempted murder case, that malice may be inferred from the use of a deadly weapon], we would respectfully suggest to the General Assembly to re-evaluate the language following 'malice aforethought' as the inclusion of the word 'implied' in section 16-3-29 is arguably inconsistent with a specific-intent crime.").